EL PUEBLO DE PUERTO RICO, peticionario *v.* ORLANDO MA-
LAVÉ GONZÁLEZ, acusado y recurrido.

*Número:* CE-86-692 *Resuelto:* 17 de febrero de 1988

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, Iván F. Fuster, Procurador General Auxiliar,* abogados de El Pueblo, peticionario; *Mariano Acosta Grubb,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

En *certiorari* el Procurador General cuestiona la supresión de la evidencia obtenida mediante el registro de un automóvil, luego de que la Policía detiene a su conductor por unas infracciones a la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 301 *et seq.* El caso plantea cuestiones fundamentales sobre aspectos de la garantía constitucional contra registros e incautaciones de evidencia en automóviles. Confirmamos al Tribunal Superior.

# I

De la transcripción de la vista sobre supresión de evidencia se desprende que el 19 de abril de 1986, mientras patrullaban en un vehículo no rotulado a las 11:30 P.M. por la Avenida Baldorioty de Castro, los policías Edwin Robles Torres y José R. Marcano observaron que un automóvil cambiaba de carril sin tomar las precauciones necesarias para evitar la colisión con otros vehículos en violación de la Sec. 5-304 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 895(a). Según el testimonio del policía Edwin Robles Torres procedieron a ordenarle al conductor que parara el automóvil y entonces ocurrieron los eventos siguientes:

> *Testigo*: Cuando lo detenemos mi compañero se va por el lado derecho del vehículo y yo por el lado del conductor. Le dije al conductor que tuviera la bondad de bajarse del automóvil.
>
> .　　.　　.　　.　　.　　.　　.　　.
>
> *Fiscal*: Y ¿Qué más sucedió allí?
> *Testigo*: [É]l baja del vehículo y al bajar sobre el asiento del conductor donde él estaba sentado observo un sobre pequeño transparente con una sustancia blanca, un polvo blanco en su interior y yo lo tomo. [É]l enseguida me dice, eso es "baking soda" y yo sé que la soda no viene así, que viene en un envase que es de este tipo. (El testigo muestra una caja donde viene envasada la bakin[g s]oda para la venta[.)] (T.E., págs. 4–5.)

En ese momento, al sospechar que podría tratarse de una sustancia controlada, el policía Robles arrestó al conductor Malavé González, le leyó las advertencias de rigor y lo registró. No encontraron otra evidencia delictiva. Aunque el acusado no ofreció resistencia al arresto, como medida preventiva lo llevaron a la patrulla y lo sentaron atrás. Mientras uno de los policías lo custodiaba, el otro registró detenidamente el interior del automóvil. Debajo del asiento del conductor el

otro policía encontró otro sobre transparente que también tenía un polvo blanco.

Concluido el registro y la incautación de los dos sobres, los policías trasladaron el automóvil y a su conductor a la División de Drogas para hacer los análisis de la sustancia ocupada. Las pruebas revelaron que el sobre encontrado sobre el asiento tenía polvo de hornear y el otro contenía "cocaína".

Malavé González fue acusado de infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404, por poseer cocaína, conducir con una licencia de aprendizaje sin estar acompañado de un conductor debidamente autorizado, 9 L.P.R.A. sec. 721, y cambiar de carril sin tomar las precauciones requeridas por la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 895.

El Tribunal Superior declaró con lugar la solicitud de supresión de evidencia. Mediante trámite de mostrar causa, confirmamos el dictamen del tribunal a quo.

## II

Al resolver la controversia de este recurso "[e]stamos conscientes de que los casos en que se invoca la garantía contra los registros y allanamientos irrazonables plantean problemas centrales de la administración de la justicia en una sociedad democrática. En este género de casos, como en tantos otros, hay colisión de intereses y nuestra tarea es luchar por hallar los modos de propiciar la armonía entre ellos. De un lado tenemos el interés histórico en proteger al ciudadano de los desmanes que provocaron en primer término el establecimiento de la garantía. Del otro, se halla el interés en proteger a la sociedad de los estragos del crimen. Consideramos que el método más deseable de lograr el equilibrio necesario no consiste en la formulación de reglas mecánicas, excesivamente abarcadoras. Debemos distinguir entre cate-

gorías de situaciones, adentrarnos en la atmósfera total de cada caso para hallar el significado preciso, dentro de unas circunstancias específicas, de un concepto tan elusivo y volátil como es el de la razonabilidad. Nuestra tarea es conciliar los intereses en pugna y no permitir que uno pulverice al otro. El sistema democrático de vida se funda en la libertad con orden, no en el orden sin libertad o en la libertad que lleve al caos". *Pueblo* v. *Dolce*, 105 D.P.R. 422, 434–435 (1976).

Conscientes de la experiencia constitucional de Estados Unidos, los miembros de la Convención Constituyente proclamaron la inviolabilidad de la dignidad del ser humano y formularon unas protecciones a la intimidad y a la propiedad de las personas contra ingerencias abusivas del Estado. Entre estos derechos del individuo frente al Estado se destaca la prohibición "contra registros, incautaciones y allanamientos irrazonables" del Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 299. Esta cláusula protege a la ciudadanía no sólo contra registros ilegales, sino también contra registros irrazonables. Para garantizar el cumplimiento con este mandato constitucional se interpuso la figura independiente e imparcial del juez entre los agentes del orden público y los ciudadanos. Nota, *Scope Limitations for Searches Incident to. Arrest*, 78 Yale L.J. 433, 436–437 (1969). Según este ordenamiento, el requisito de que sea un juez el que haga la determinación de causa probable para la orden de allanamiento protege a los ciudadanos ante situaciones de registros e incautaciones efectuadas por el Estado. Corresponde al magistrado hacer el delicado balance entre los derechos del ciudadano y las necesidades del Estado de investigar agresivamente los delitos cometidos.(1)

---

(1) Véase C. Hancock, *State Court Activism and Searches Incident to Arrest*, 68 Va. L. Rev. 1085, 1092–1093 (1982).

"The procurement of a warrant, at least in theory, protects two fundamental privacy interests of individuals: the right to be free from arbitrary searches and seizures, and the right to be free from unnecessary intrusion once a search has

Al interpretar el alcance de la protección este Tribunal ha reconocido expresamente su facultad de ampliar las garantías contra registros e incautaciones más allá de los límites de la Cuarta Enmienda, Const. EE.UU., L.P.R.A., Tomo 1. La experiencia constitucional en Estados Unidos con la Cuarta Enmienda llevó a la Convención Constituyente a incorporar en el Art. II, Sec. 10 de nuestra Constitución, *supra*, una protección análoga, aunque su contenido y alcance son más amplios. Como garantía del individuo contra el poder investigativo del Estado se incorporó específicamente una cláusula de exclusión de evidencia obtenida mediante un registro irrazonable. Por derivación de las interpretaciones judiciales de la Cuarta Enmienda, en Puerto Rico se aprobaron unas garantías personales más amplias que las que provee la Constitución federal en este campo, a tenor con los principios rectores de igualdad y dignidad humana del Preámbulo, Const. E.L.A., L.P.R.A., Tomo 1.

En el pasado hemos afirmado que la Constitución de Puerto Rico goza de una vitalidad independiente de la Constitución de Estados Unidos, *Pueblo* v. *Dolce*, supra, y que "su interpretación no ha sido, ni tiene necesariamente que ser, históricamente paralela en todo sentido" con la de la Cuarta Enmienda. *Pueblo* v. *Lebrón*, 108 D.P.R. 324, 327 (1979). Aunque las interpretaciones del Tribunal Supremo federal establecen el alcance mínimo de la protección constitucional, nos corresponde el deber histórico de ser los máximos guardianes de la Carta de Derechos de la Constitución de Puerto Rico, así como la obligación de descargar independientemente esta responsabilidad constitucional. "Por ello po-

---

been lawfully undertaken. Both of these interests are secured through the warrant process by a magistrate's independent presearch scrutiny of probable cause and particularity. The probable cause inquiry insures against arbitrary intrusions, and the particularity inquiry against unnecessary rummaging in the course of an otherwise justifiable search."

demos ir más allá de las fronteras limitativas de la jurisprudencia federal, incluso la del Tribunal Supremo. De igual manera pueden hacerlo los Estados, y así lo ha reconocido el Tribunal Supremo, precisamente con respecto a la garantía contra registros y allanamientos irrazonables." (Citas omitidas.) *Pueblo v. Falú Martínez*, 116 D.P.R. 828, 837 (1986).

Al considerar este trasfondo jurídico, resolvemos la controversia de este caso al amparo de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico. Por lo tanto, las referencias en esta opinión a decisiones del Tribunal Supremo federal serán únicamente con fines de precisar los contornos constitucionales mínimos, según delimitados por ese Tribunal en su interpretación de la Cuarta Enmienda.

## III

En *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207–208 (1984), examinamos la cobertura del Art. II, Sec. 10 de nuestra Constitución, *supra*, y concluimos que "sujeto a contadas excepciones de alcance rigurosamente definido, la garantía contenida en la Sec. 10 del Art. II de la Constitución de Puerto Rico cubre tanto los registros administrativos como los penales. La regla general es, en consecuencia, que todo registro, allanamiento o incautación que se realice, no importa su índole penal o administrativa, es irrazonable per se de llevarse a cabo sin orden judicial previa . . . a menos que se consienta al registro, directa o indirectamente, o circunstancias de emergencia requieran lo contrario y el peso de los intereses en conflicto exija una solución distinta". (Citas omitidas.)

Para garantizar la efectividad de esta protección, la regla general es que un registro o incautación sin orden judicial produce una presunción de invalidez, por lo que compete al Ministerio Público rebatirlo mediante la presentación de

prueba sobre las circunstancias especiales que requirieron esa intervención. *Pueblo* v. *Lebrón*, supra. Véase *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971).

■ Aunque la trayectoria jurisprudencial en esta área ha oscilado en su aplicación a través de los años, tanto este Tribunal como el Tribunal Supremo federal han expresado su preferencia por la previa intervención de un magistrado con criterio neutral e independiente. Véanse: *Johnson* v. *United States*, 333 U.S. 10, 13–14 (1948); W.M. Phillips, *Toward a Functional Fourth Amendment Approach to Automobile Search and Seizure Cases*, 43 Ohio St. L.J. 861 (1982). En otras palabras, la regla general es que los agentes del orden público deben primero obtener una orden judicial para efectuar un registro. Las excepciones a esta norma —que no es absoluta— son por otra parte limitadas y específicas. *Pueblo* v. *Rivera Rivera*, 117 D.P.R. 283 (1986); *Pueblo* v. *González Rivera*, 100 D.P.R. 651, 656–657 (1972). Véanse: *Katz* v. *United States*, 389 U.S. 347, 357 (1967); *Jones* v. *United States*, 357 U.S. 493, 499 (1958).

■ En *Pueblo* v. *Costoso Caballero*, 100 D.P.R. 147, 152–153 (1971), aplicamos a los hechos allí presentes la doctrina de las circunstancias especiales que hacen razonable un registro del área al alcance del sospechoso cuando es incidental y contemporáneo a un arresto válido:

1. Es permisible un registro sin orden de allanamiento efectuado en la persona del arrestado y del área que está a su alcance inmediato. Como hemos dicho antes, esto se justifica para ocupar armas que puedan ser empuñadas y utilizadas por el acusado para agredir a los agentes del orden público o para intentar una fuga, y para ocupar evidencia que de otro modo el arrestado podría destruir.

2. No es permisible un registro sin orden de allanamiento aunque sea contemporáneo con un arresto válido, de aquellos lugares y muebles de una casa que no están al alcance inme-

diato de la persona arrestada. . . . Esa búsqueda que no tiene por propósito evitar los riesgos antes mencionados (agresiones con armas, fuga, destrucción de evidencia) no son registros razonablemente hechos con motivo de un arresto y por lo tanto están proscritos por la Sec. 10 del Art. II de la Constitución de Puerto Rico y por la Enmienda IV de la Constitución de los Estados Unidos.

■ También hemos hallado circunstancias que validan y hacen razonable un registro sin orden judicial en la doctrina de la prueba a plena vista. En *Pueblo* v. *Dolce*, supra, pág. 436, elaboramos los contornos de la figura y definimos los requisitos para justificar su utilización: (1) El artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observa la prueba debe haber tenido derecho previo a estar en posición desde la cual podía verse la prueba; (3) debe descubrirse el objeto inadvertidamente, y (4) la naturaleza delictiva del objeto debe surgir de la simple observación.

■ La protección de la Sec. 10 contra registros irrazonables fue extendida específicamente a vehículos de motor en *Pueblo* v. *Sosa Díaz*, 90 D.P.R. 622 (1964), y en *Pueblo* v. *Acevedo Escobar*, 112 D.P.R. 770 (1982). Debido a la diferencia conceptual y funcional entre una residencia y un automóvil, y a la cuidadosa reglamentación que rige su uso en las vías públicas, los tribunales han concluido que la expectativa de intimidad es menor cuando se usa un automóvil. *Pueblo* v. *Acevedo Escobar*, supra, pág. 776. Véase W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, Minnesota, West Pub. Co., 1987, Vol. 3, Secs. 7–7.5, págs. 1–145.

Pero "la palabra automóvil no es un talismán en cuya presencia se desvanece y desaparece la Cuarta Enmienda", *Coolidge* v. *New Hampshire*, supra, págs. 461–462, o el Art. II, Sec. 10 de la Constitución de Puerto Rico, *supra*. Tam-

poco significa que al montarnos en un vehículo de motor renunciamos a nuestro derecho de intimidad y a no autoincriminarnos. *New York* v. *Class*, 475 U.S. 106 (1986).

El uso del automóvil está altamente reglamentado precisamente por su importancia en nuestra sociedad y por el interés del Estado en codificar unas reglas mínimas que eviten accidentes en las carreteras. En esta época el automóvil constituye no solamente un medio principal de transportación de muchas familias, sino también para algunos el instrumento de trabajo. Al delimitar el alcance de la excepción a la regla general contra registros sin orden judicial tenemos que evitar el debilitamiento de las garantías del Art. II, Sec. 10 de la Constitución de Puerto Rico, *supra*. A igual conclusión llegó el Tribunal Supremo federal recientemente:

> El viaje en automóvil es un modo de transportación básico, divertido y a menudo necesario, desde y hacia el hogar, el lugar de trabajo y las actividades recreativas. Muchas personas invierten más horas al día viajando en automóviles que caminando por las calles. Sin duda, muchos se sienten más seguros y en mayor intimidad al viajar en automóvil de lo que se sienten al exponerse mediante modos de transportes peatonales o de otra índole. Si los individuos estuviesen sujetos a la irrestricta intrusión gubernamental cada vez que entraran en un automóvil, la seguridad garantizada por la Décimocuarta Enmienda se vería seriamente circunscrita. Según se reconoció en *Terry* v. *Ohio*, supra, la gente no es despojada de todas las protecciones de la Décimocuarta Enmienda cuando salen de sus casas a las aceras públicas. Tampoco se les despoja de esos intereses cuando se salen de la acera y entran en sus automóviles. (Traducción nuestra.) *Delaware* v. *Prouse*, 440 U.S. 648, 662–663 (1979).

Ahora bien, no podemos ignorar que dada su movilidad el automóvil en ocasiones es el medio utilizado por los delincuentes para sus actividades ilícitas y que con frecuencia es el producto del delito. Ante este cuadro, no es tarea fácil para los tribunales definir los perímetros de la Sec. 10.

La colisión entre el derecho a la intimidad y la protección indebida del delincuente es particularmente dramática durante las intervenciones policiacas en la vía pública motivadas por una violación a las leyes de tránsito. Véanse: Nota, *Warrantless Vehicle Searches and the Fourth Amendment: The Burger Court Attacks the Exclusionary Rule*, 68 Cornell L. Rev. 105 (1982); Nota, *Lawfulness of Search of Motor Vehicle Following Arrest for Traffic Violations*, 10 A.L.R.3d 314; Comentario, *New Limits on Police Vehicle Searches in Washington*, 60 Wash. L. Rev. 177 (1984); Comentario, *Search Incident to Arrest for Minor Traffic Violations*, 11 The Am. Crim. L. Rev. 801 (1973). A diario cientos de ciudadanos cometen infracciones menores de tránsito y la Policía se enfrenta a múltiples situaciones conflictivas con conductores. Tanto los padres en camino a la escuela para llevar a los niños y continuar a sus trabajos, como los delicuentes que huyen del sitio del crimen, utilizan el automóvil como medio principal de transporte.

■ Conscientes del potencial de uso ilícito de este medio de transportación, desde mediados de la década de los años sesenta autorizamos el registro sin orden de un vehículo dependiendo de "los hechos y circunstancias —la atmósfera total— del caso". *Pueblo* v. *De Jesús Robles*, 92 D.P.R. 345, 359 (1965). En nuestro ordenamiento constitucional la razonabilidad del registro de un automóvil sin orden judicial ha dependido de que haya causa probable para el mismo y de que existan unas circunstancias especiales que provean la justificación necesaria.

■ La mera infracción de tránsito de por sí no justifica un registro sin orden, aunque valida la detención inicial del vehículo. *Pueblo* v. *De Jesús Robles*, supra. La Ley de Vehículos y Tránsito de Puerto Rico autoriza a la Policía a detener "cualquier vehículo cuando a su juicio el mismo estu-

viere siendo usado en violación" de dicho estatuto "o estuviere su conductor u ocupantes relacionados con cualquier accidente de tránsito", 9 L.P.R.A. sec. 1152(c), así como cuando hay una "sospecha razonable de que el conductor no tiene licencia o el vehículo no está registrado, o que tanto el vehículo como su ocupante están sujetos a arresto por violación de la ley . . .". (Traducción nuestra.) *Delaware* v. *Prouse*, supra, pág. 663. Se trata de una detención con propósitos específicos y por un período de tiempo limitado. Sin embargo, reiteramos que, en ausencia de circunstancias especiales, es irrazonable un registro del interior del automóvil sin orden judicial cuando la Policía lo ha detenido por una violación menor de tránsito.

## IV

En el caso de autos la detención inicial del automóvil por los agentes del orden público fue justificada, porque observaron al vehículo cruzar indebidamente el carril de la avenida en abierta violación a las leyes de tránsito. 9 L.P.R.A. sec. 1152(c). Una vez se detiene el vehículo y el conductor sale del mismo para hablar con uno de los agentes, el otro agente descubre inadvertidamente el primer sobre transparente con el polvo blanco que estaba a plena vista sobre el asiento del automóvil. En ese momento los agentes tenían motivos fundados para creer que se estaba cometiendo un acto ilegal en su presencia y, como consecuencia, arrestar a Malavé González por una violación al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, *supra*. Procedía igualmente la incautación de la prueba bajo el precedente de *Pueblo* v. *Dolce*, supra.

Luego de arrestar al acusado, los agentes prudentemente lo llevaron al automóvil de la Policía y fue puesto bajo la custodia de uno de ellos. En ese momento el automóvil de Malavé González ya no se encontraba bajo su control inmediato

ni tenía acceso a él. Tampoco había cómplices en el automóvil ni razón alguna para creer que la vida de los policías o de otras personas estuviera en peligro, o que desapareciera la evidencia del delito de no efectuarse el registro sin orden. Véase, por ejemplo, *State* v. *Daigre*, 364 So. 2d 902 (1978). El automóvil estaba inmovilizado y bajo el control de los agentes. Éstos lo trasladaron al estacionamiento de la División de Drogas y Narcóticos, por lo tanto no existía peligro de que desapareciera o fuera destruida la prueba del delito. También tuvieron suficiente tiempo para obtener la correspondiente orden judicial y registrar el vehículo en el cuartel.(2)

En estas circunstancias, el registro del interior del automóvil fue irrazonable y la evidencia ocupada fue correctamente suprimida por el tribunal de instancia. Precisamente para evitar un registro como el que se efectuó en este caso es que se justifica la intervención previa de la figura del magistrado imparcial e independiente prevista por los autores de nuestra Constitución.

Por las razones expuestas anteriormente, *se expedirá el auto de certiorari y se dictará sentencia que confirma la resolución del Tribunal Superior.*

El Juez Asociado Señor Negrón García emitió opinión disidente, a la que se une el Juez Asociado Señor Ortiz.

---

(2) De los autos no surge que existan las circunstancias esbozadas en la opinión disidente sobre la custodia y el traslado de los vehículos involucrados en este tipo de intervención policiaca. Por esta razón, no es necesario expresarnos sobre ese asunto en este momento.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Ortiz.

Infructuosamente invitamos otra vez al Tribunal a relexionar sobre la aplicación a los hechos del caso de esta sabia admonición:

> El Derecho no se produce y realiza en abstracto, desligado de los estímulos que la vida y la diaria experiencia le acarrean. Son las acciones de los hombres, sus cuitas y sus esperanzas, las que ocupan las previsiones del legislador. Asesorar a aquéllos, prescribirles normas de conducta, definir sus derechos en liza, y utilizar para ello fórmulas que puedan parecerles esotéricas o abstractas, resulta tan ilógico como la conducta de aquellos médicos a que se refiere Ossorio, que seguían hablando y recetando en latín cuando ya nadie entendía este idioma. F. Soto Nieto, *Compromiso de Justicia*, Madrid, Ed. Montecorvo, 1977, pág. 254.

Varios postulados básicos animan este disenso. El primero, que "[l]as garantías personales frente al arresto, el registro, la incautación y el allanamiento, *tienen su límite en la conducta criminal.* Sólo para casos de sospecha fundada o sea cuando medie causa probable —*fuera de actuaciones de delito in fraganti determinadas en la ley penal*— se concede a la autoridad judicial la facultad de expedir mandamientos de arresto y registro". (Énfasis suplido.) 4 Diario de Sesiones de la Convención Constituyente 2567–2568 (1952). Segundo, "[p]retender que el policía sólo pueda arrestar cuando se ha cometido un delito en vez de *cuando tuviera motivos fundados para creer* que se ha cometido, prácticamente quiere decir que los policías tendrían que ser magistrados y tendrían que celebrar un juicio para ver si ha cometido el delito o no y, en caso afirmativo, entonces proceder al arresto. Es patente lo absurdo de esta posición. Es claro que la determinación de si se cometió un delito o no, no corres-

ponde hacerla ni al policía ni a la persona que va a ser arrestada, sino que corresponde hacerla, en su día y mediante el debido proceso de ley, a un tribunal de justicia. La sociedad civilizada sobrevive predicada en la norma de que los individuos no se tomarán la justicia por su mano". (Énfasis en el original.) *Cepero Rivera* v. *Tribunal Superior*, 93 D.P.R. 245, 248 (1966). Tercero, que el registro de un automóvil procede bajo una tesis jurídica diferente de aquella que lo justifica, incidental a un arresto. *Chambers* v. *Maroney*, 399 U.S. 42, 49 (1970). Existe una diferencia entre el registro de un vehículo de motor y una estructura residencial u oficina. *Pueblo* v. *Turner Goodman*, 110 D.P.R. 734, 738 (1981). Y, cuarto, en la persecución del crimen no podemos imponerle al Estado y a la Policía del país normas no previstas en la Constitución, amén de su cuestionable valor práctico.

Expongamos cabal y fielmente los hechos cuya veracidad no está en controversia conforme el testimonio de los dos agentes de la Policía, Edwin Robles Torres y José R. Marcano Fantauzzi. Lo hacemos separadamente, porque una de las fallas de la opinión del Tribunal es lo limitado y escueto de la exposición de los hechos debido, quizás, a que está fundada en una porción fragmentada de la de uno sólo de los agentes. Dicha exposición dista de ser una apreciación integral y completa de lo atestiguado por ambos agentes. Como consecuencia, estamos ante una decisión en que metodológicamente se produce la anomalía de que el derecho determina los hechos y no —como debe ser— a la inversa. Respetuosamente, pero vehementemente, rechazamos ese método de adjudicación, máxime si intenta sentar precedente y revoca todo un cuerpo doctrinario.

## I

El 19 de abril de 1986, aproximadamente a las 11:30 P.M., los agentes Robles Torres y Marcano Fantauzzi, ambos uniformados, patrullaban en vehículo oficial no rotulado por la

Carr. Núm. 26 (Baldorioty de Castro). Al llegar a la intersección Ave. Gobernadores, observaron al automóvil Chevrolet-Nova, tablilla 24T962, que hacía cambios indebidos de un carril a otro. Aparearon su auto-patrulla a dicho vehículo y en el Km. 7.2 ordenaron al conductor que se detuviera. Éste no se detuvo de inmediato, sino que aceleró la marcha. Lo siguieron, se situaron paralelamente y nuevamente le indicaron al conductor que se detuviera. En fin, cinco (5) hectómetros más adelante, en el Km. 7.9, se detuvo. *En ese momento los agentes observaron cuando hizo unos movimientos como de esconder algo debajo del asiento delantero* ("ademán como de esconder algo debajo del asiento", T.E., pág. 4).

Los agentes estacionaron su automóvil detrás del otro vehículo. Se bajaron. Robles Torres se acercó por el lado del conductor —izquierdo— y Marcano Fantauzzi por el otro. Robles Torres ordenó al conductor desmontarse del vehículo. Éste resultó ser Orlando Malavé González. En ese instante Robles Torres observó en el asiento donde estaba Malavé González antes sentado un sobre pequeño de plástico transparente que contenía un polvo blanco en su interior. Por su apariencia, contenido y según su entrenamiento y experiencia, el agente pensó que podía tratarse de la sustancia controlada conocida como cocaína. Procedió a ocuparlo. Malavé González le indicó que era polvo de hornear (*baking soda*).(¹) El agente Robles Torres, según su experiencia y al reconocer que esa no era la forma como se envasaba para la venta el polvo de hornear, lo arrestó y le leyó las advertencias. Malavé González carecía de licencia de conducir. Se le ordenó se sentara en el asiento del auto de los agentes. Mien-

---

(¹) Las propiedades inherentes del polvo de hornear son inocuas. Sin embargo, su apariencia externa se asemeja al polvo de cocaína. Curiosamente, la cualidad inofensiva del polvo de hornear desaparece al percatarnos de que es un ingrediente que se usa para preparar el peligroso *crack*. *Editorial on File*, Vol. 17, No. 15 (August 1–15, 1986), pág. 918.

tras tanto, el agente Marcano Fantauzzi, motivado por los movimientos suspicaces de Malavé González —"de esconder algo debajo del asiento"— con una linterna inspeccionó el interior delantero del vehículo, área próxima en que momentos antes éste estaba sentado. En el piso —cerca del pedal del acelerador— encontró otro sobre de plástico transparente, más pequeño que el anterior, que contenía una sustancia de características similares a las observadas en el primero. Procedió a ocuparlo.

Así las cosas, se dirigieron a los cuarteles de la División de Drogas y Narcóticos del Área Policiaca de Carolina. Allí se hizo un análisis de campo de ambos sobres. El primero resultó ser polvo de hornear (*baking powder*). El segundo, *cocaína*. Estos resultados fueron confirmados posteriormente en un análisis químico realizado en el Laboratorio de la Policía.

Previa determinación de causa probable, Malavé González fue acusado en el Tribunal Superior, Sala de Carolina, de infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404 (poseer cocaína), conducir sin estar autorizado y cambiar indebidamente de carril, Secs. 3-301 y 5-304 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. secs. 791 y 895, respectivamente. Subsiguientemente, el acusado solicitó la supresión de la evidencia al argüir que fue arrestado ilegalmente y medió un registro irrazonable. El tribunal accedió. A solicitud del Procurador General, mediante trámite de mostrar causa, revisamos la corrección del dictamen.

## II

En el contexto fáctico de autos erró el foro de instancia. La intervención de los agentes de la Policía fue justificada, legítima y razonable, acorde con la atmósfera total del caso. Primero, no se cuestionan persuasivamente los hechos que dan margen a la intervención policial inicial basada en la ob-

servación de una violación a la Ley de Vehículos y Tránsito de Puerto Rico, a saber: cruzar indebidamente de un carril a otro, subsiguientemente, hacer caso omiso a que se detuviera, y no ser conductor válidamente autorizado. Estas circunstancias, de por sí, justificaron el arresto.

En nuestra jurisdicción, al igual que en la mayoría de los estados norteamericanos —en virtud de lo preceptuado en la Sec. 5-1120(a) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1152(a)— todo conductor viene obligado a detenerse a requerimiento de la Policía si existe una *"razonable sospecha* de que el conductor no tiene licencia, o el vehículo no está registrado, *o que tanto el vehículo como su ocupante están sujetos a arresto por violación de la ley . . .".* (Traducción nuestra y énfasis suplido.) *Delaware* v. *Prouse,* 440 U.S. 648, 663 (1979).

La Ley de Vehículos y Tránsito de Puerto Rico, en su Sec. 9-104, en lo pertinente, dispone que "[s]i el infractor entregare su licencia *no se le arrestará".*(2) (Énfasis suplido.) 9 L.P.R.A. sec. 1494. "Guiar un automóvil sin licencia de conductor constituye un delito público. En consecuencia, el arresto del acusado fué válido. Y la Policía podía registrar incidentalmente al acusado y al automóvil que éste guiaba. La evidencia ocupada como resultado de tal registro legal puede usarse para probar un delito que no está relacionado con el delito por el cual se efectuó el arresto. *Pueblo* v. *Colón,* 68 D.P.R. 893 (1948); *Pueblo* v. *Ríos,* 71 D.P.R. 969 (1950); *Pueblo* v. *Soto,* 77 D.P.R. 206 (1954); *Pueblo* v. *Santiago,* 78 D.P.R. 659 (1955). *Cf. Pueblo* v. *Miranda,* 79 D.P.R. 132 (1956). A ese respecto, véanse además: *Carroll* v. *United States,* 267 U.S. 132 (1925); *Brinegar* v. *United States,* 338 U.S. 160 (1949); *United States* v. *Rabinowitz,* 339 U.S. 56

---

(2) En esa situación el policía puede arrestar a todo conductor no autorizado. No así si está autorizado, a quien sólo puede expedirle una citación a cambio de entregar la licencia.

488

(1950); Fellman, *The Defendant's Rights* (1958) 138–141."
*Pueblo* v. *Vargas*, 80 D.P.R. 296, 298 (1958); *Pueblo* v. *Díaz
Torres*, 89 D.P.R. 720, 730 (1963).

## III

La opinión del Tribunal reconoce que la detención inicial
y arresto de Malavé González estuvieron justificados. De
igual modo acepta que la actuación del agente Robles Torres
también fue lícita y razonable. Al decir de la mayoría en "ese
momento los agentes tenían motivos fundados para creer
que se estaba cometiendo un acto ilegal en su presencia y,
como consecuencia, [para] *arrestar a Malavé González por
una violación al Art. 404 de la Ley de Sustancias Contro-
ladas de Puerto Rico, supra. Procedía igualmente la incau-
tación de la prueba . . .".* (Énfasis suplido.) Opinión del
Tribunal, pág. 48. El razonamiento es correcto, pues lo que
posteriormente resultó ser soda, perceptiblemente tenía
todas las apariencias externas de ser una sustancia contro-
lada, cocaína. Ello es lo determinante.

Sin embargo, ahí termina la lógica del dictamen. Se pasa
por alto que, además del registro de su persona, el del auto-
móvil fue *razonable* e *incidentalmente* válido por su coetá-
nea y racional conexión con los hechos ocurridos. Cierta-
mente la búsqueda posterior en el interior del vehículo por el
agente Marcano Fantauzzi y el hallazgo de la cocaína, basada
en que antes de su detención Malavé González hizo unos mo-
vimientos "sospechosos de esconder algo debajo del asien-
to", estuvo también autorizada como parte de una investi-
gación coetánea en proceso para determinar si había armas u
otras sustancias ilegales. La opinión del Tribunal inexpli-
cablemente no menciona ni le atribuye importancia a este
hecho esencial y no contradicho. Fracciona súbitamente la
cadena de hechos y los motivos fundados de los agentes.
Cuando el registro es incidental a un arresto los agentes del
orden público pueden verificarlo sin necesidad de obtener

previamente una orden de allanamiento. Véase *United States* v. *Rabinowitz*, supra. Ya en *Agnello* v. *United States*, 269 U.S. 20, 36 (1925), el Tribunal Supremo federal había expresado que: "'No hay duda sobre el derecho, sin orden de allanamiento, a registrar *contemporáneamente* a cualquier persona arrestada legalmente mientras comete un delito, así como el lugar en que se encuentra, con el propósito de descubrir y ocupar objetos relacionados con el delito, como los frutos del mismo, o los instrumentos usados como medios para su comisión, así como armas u otras cosas que puedan utilizarse para escapar a la custodia.'" (Énfasis en el original.) *Pueblo* v. *Sosa Díaz*, 90 D.P.R. 622, 626–627 (1964).

Ello nos lleva a examinar si el registro fue razonable. La tarea requiere explorar tres dimensiones inextricablemente unidas: el objeto, el concepto de motivos fundados y el de razonabilidad.

*Primero*, el objeto, esto es, el registro, se realizó en un automóvil de motor. Al respecto, en *Pueblo* v. *Acevedo Escobar*, 112 D.P.R. 770, 776 (1982) —luego de reiterar que el principio constitucional sobre registros y allanamientos no es absoluto y permite excepciones fundadas en intereses apremiantes— reconocimos que esa "misma doctrina admite —debido a la diferencia conceptual y funcional entre una residencia o estructura (uso y ubicación *fijos*) y la movilidad y reglamentación de un vehículo de motor, al igual que la fluidez, rapidez y, en ocasiones, situaciones marginales en que ocurren los acontecimientos— la legalidad de un registro del compartimiento de pasajeros de un vehículo de motor —a diferencia del baúl— sin previa orden de allanamiento. *El uso por las vías públicas de un automóvil, la facultad en ley de detener para fines de infracción de las leyes de tránsito y características físicas del medio de locomoción, diluyen la razonable expectativa de privacidad con referencia a otros tipos de propiedad. Si el registro es razonable o no depen-*

*derá de los hechos y circunstancias especiales de cada caso,
'la atmósfera total'. Pueblo* v. *De Jesús Robles*, 92 D.P.R. 345
(1965). Esta excepción a la doctrina exclusionaria fue recono-
cida en la esfera federal desde *Carroll* v. *United States*, 267
U.S. 132 (1925); *Cady* v. *Dombrowski*, 413 U.S. 433 (1973), y
*New York* v. *Belton*, 453 U.S. 454 (1981)". (Énfasis suplido.)
Y en *Pueblo* v. *Turner Goodman*, supra, señalamos la "dife-
rencia constitucional entre hogares y automóviles".

*Segundo*, el concepto de motivos fundados —como sinó-
nimo de causa probable, *Pueblo* v. *Díaz Díaz*, 106 D.P.R. 348,
353 (1977)— no es un férreo producto de un examen o experi-
mento a posteriori en el laboratorio aséptico judicial. Tam-
poco corresponde al mundo de lo académico. No es teórico ni
abstracto, sino esencialmente pragmático. Lo que se le exige
al policía son motivos fundados, a saber, razones suficientes o
eficaces. Ello excluye certeza matemática y menos evidencia
de culpabilidad. A tal efecto la Regla 11 de Procedimiento
Criminal, 34 L.P.R.A. Ap. II, exige "tener motivos fundados
para *creer*". *Creer* significa "[t]ener por cierta una cosa que
el entendimiento no alcanza o que no está comprobada o de-
mostrada". *Diccionario de la Lengua Española*, 20ma ed.,
Madrid, Ed. Espasa-Calpe, 1984, T. 1, pág. 395.

En nuestra jurisprudencia ha cristalizado el enfoque que
"un funcionario de[l] orden público puede efectuar un arres-
to sin la orden correspondiente, entre otros casos, cuando
tuviere motivos fundados para creer que la persona que va a
ser arrestada ha cometido un delito grave, independiente-
mente de que dicho delito se hubiese cometido o no en reali-
dad. Regla 11 de Procedimiento Criminal de Puerto Rico, 2
*Práctica Forense*, pág. 20 (1964). La jurisprudencia enmarca
el concepto de 'motivo fundado' en la posesión de aquella in-
formación y conocimiento que lleven a una persona ordinaria
y prudente a creer que el arrestado ha cometido delito. *Pue-
blo* v. *Cabrera Cepeda*, 92 D.P.R. 70, 74 (1965); *Cepero Rivera*

v. *Tribunal Superior*, 93 D.P.R. 245, 248 (1966). La conducta del funcionario público se juzga pues en orden al criterio de la persona prudente y razonable, por lo que es necesario considerar las circunstancias específicas del arresto para determinar su validez". *Pueblo* v. *Alcalá Fernández*, 109 D.P.R. 326, 331–332 (1980); *Pueblo* v. *Lafontaine Álvarez*, 98 D.P.R. 75, 81 (1969).

*Tercero*, el adjetivo *razonable* viene del latín *"rationabilis"* que significa "arreglado, justo, conforme a razón; 2. ant. racional". *Diccionario de la Lengua Española, op. cit.*, T. II, pág. 1147. Como tal, es obrar con discernimiento. Versa sobre realidades eminentemente pragmáticas, de carácter relativo y flexible. No es estático. En diferentes épocas y momentos conlleva variados significados y grados. Se puede dar sobre situaciones inesperadas, más o menos imperiosas y urgentes, en que la libertad y curso de acción para actuar de diversos modos se reduce notablemente. Lo razonable descansa en lo moderado, en la cautela, prudencia, en la acción u omisión. Por ende, la variabilidad en el comportamiento del ser humano involucrado en todo acto criminoso y los distintos trasfondos del acto (sitio, hora, personas, edades y naturaleza y gravedad) son factores pertinentes para evaluar la razonabilidad de un registro y allanamiento hecho sin orden judicial.

Con esta óptica presente, independientemente de ser un registro válido, incidental a su arresto, notamos que de su faz el sobre que contenía polvo blanco, visible a través de su cubierta plástica y observado por el agente Robles Torres — en unión al movimiento que antes había realizado el conductor Malavé González como de intentar esconder algo— constituyeron suficientes motivos adicionales para el registro válido del piso del automóvil.

## IV

No obstante, al desatender la doctrina jurisprudencial previamente expuesta, y todos los indicadores objetivos y elementos fácticos presentes, se resuelve que era menester la obtención de una orden previa judicial para registrar el piso del automóvil. Como único fundamento, se aduce que Malavé González estaba ya en el automóvil de la Policía. Según dijimos en *Pueblo* v. *De Jesús Cordero*, 101 D.P.R. 492, 499 (1973), el argumento está "viciado de bizantinismo". Se funda en una premisa errónea. Advertimos en su fondo una contradicción. Expliquémosla.

La validez del arresto de la persona de Malavé González y la incautación inicial del objeto presuntivamente delictivo, sólo subsistiría si le atribuimos algún valor jurídico al descubrimiento hecho por el agente Robles Torres del sobre plástico transparente *dentro* del vehículo. Éste, de su faz, aparentaba contener sustancia controlada. Si a ello añadimos los movimientos de Malavé González indicativos de haber ocultado algo debajo del asiento, ¿cómo sostener entonces la legalidad de ese arresto e incautación original y negarle igual consecuencia jurídica para registrar inmediatamente el área próxima en que éste instantes antes se encontraba y había intentado ocultar algo? ¿Por qué detener la investigación contemporánea y razonable en progreso? Nuestro sentido común nos dicta que la conducta de los agentes fue prudente y razonable, consustancial con su labor investigativa. No estamos ante un registro "remoto en tiempo y lugar al arresto", sino contemporáneo y necesario. *Pueblo* v. *Sosa Díaz*, supra, págs. 630–631. ¿Podían los agentes arriesgarse a que allí permaneciera intocada la cocaína o quizás un arma? ¿Por qué ponerles a los agentes la venda de la Dama de la Justicia en sus ojos y paralizar la rápida y eficiente ejecución de una investigación en proceso? ¿No debilita esta interpretación esa labor investigativa? *Pueblo* v. *Ortiz Martínez*, 116 D.P.R.

139 (1985). ¿No tienen ninguna fuerza persuasiva las percepciones y experiencia de esos agentes en sus ánimos prevenidos?

Solamente si hacemos caso omiso a la cronología de hechos probados podemos refrendar la tesis de que era menester una orden judicial previa. Si admitimos los mismos, la exigencia es irrazonable.

## V

En fin, el remedio judicial impuesto —obligar a la Policía a obtener una orden de registro del automóvil que ya tenía bajo su custodia— es forzado e irreal. En casos análogos de registros contemporáneos y justificados, el requerir a la Policía del país la obtención de una orden judicial, el trasladar el vehículo o la opción de dejarlo inmovilizado en las carreteras, con o sin vigilancia, constituye una norma irrazonable de pobre valor práctico. No sólo expone al vehículo al potencial del vandalismo y hurto por terceros, sino a que desaparezca cualquier evidencia que contenga. *Pueblo* v. *De Jesús Cordero*, supra, pág. 500. En nuestro medio ambiente criminoso, es cuestionable que ello sea una solución real y sabia. El sentido común aconseja lo contrario.

El Tribunal Supremo federal ha rechazado imponerle a la Policía el requisito constitucional "de tener disponible el personal y equipo necesarios para transportar vehículos allanados a una localización central hasta tanto se obtenga una orden judicial". (Traducción nuestra.) *Arkansas* v. *Sanders*, 442 U.S. 753, 765 (1979). Ello representaría "un gravamen severo, casi imposible" de acatar. Íd., pág. 766, esc. 14.

Aparte de lo oneroso, en su proyección futura, la pauta suscita serias interrogantes. En primer lugar, al presumir que la Policía cuenta para toda intervención de este género con los recursos y facilidades, la medida resulta en un doble contrasentido, pues ¿cómo negar su registro pero justificar

esa remoción sin mandamiento judicial? ¿Qué resulta más gravoso e irrazonable, la sola incautación de la sustancia controlada o la proveniente de la remoción total del vehículo?

Al trasladarse el automóvil al cuartel u otro lugar bajo el control de la Policía, ¿sería en grúa o mientras conducía uno de los agentes? ¿Evita —o por el contrario invita— a que se susciten alegaciones y controversias fácticas en torno a la posible introducción subrepticia en el vehículo de otro material delictivo imputable también al ciudadano que está ausente? Para antes de ese traslado, ¿necesitaría la Policía una orden judicial para examinar sus interiores y realizar un inventario de su contenido?

Más aún, si nos concentramos en el caso ante nos, la orden judicial exigida por el Tribunal, ¿estaría predicada en la observación por los agentes de que Malavé González intentó ocultar algo? De ser esto en la afirmativa, subsisten enigmas inquietantes. Según la interpretación restrictiva de la opinión del Tribunal, lo anticipable es que hubiese sido negada. Si se presume lo contrario —que hubiese sido expedida por un magistrado de instancia— ¿satisfaría ello la visión apriorística de la mayoría del Tribunal?

La expedición de una orden de registro y su juridicidad tienen que sostenerse en los hechos consignados por un agente ante el magistrado. Su expedición per se no garantiza ni convalida su legalidad. Como cualquiera otra, está sujeta al escrutinio judicial. Si es así, ¿no ha incurrido inadvertidamente el Tribunal en un lamentable error producto de un razonamiento circular? ¿Qué lógica tiene reconocer que la Policía tenía motivos fundados para realizar el arresto de Malavé González e incautarse de la sustancia sobre el asiento del vehículo, luego inmediatamente negársela para el registro incidental del piso próximo de ese asiento, para después aceptarla por el solo hecho de que lo autorizó un magistrado? Repetimos, su expedición no asegura su validez. Después de

todo, "[p]ara propósitos constitucionales, no vemos diferencia entre, de un lado incautar y retener un vehículo antes de presentarle a un magistrado el asunto sobre causa probable, y del otro, el haberse efectuado inmediatamente un registro sin la orden. *Si existe causa probable para el registro, cualesquiera de esos cursos de acción son constitucionalmente razonables*". (Traducción nuestra y énfasis suplido.) *Chambers* v. *Maroney*, supra, pág. 52.

Por último, en las circunstancias de autos, es también altamente objetable la exigencia de la orden judicial previa en vista del tiempo sustancial que de ordinario toma a los agentes del orden público personarse, preparar los documentos necesarios y obtenerla en las concurridas Salas de Investigaciones del Centro Judicial de San Juan o de Carolina. En esta opción, el desgaste de recursos policiacos es evidente e insostenible.

Sostenemos que la opinión del Tribunal revoca sólidos precedentes mediante la aplicación de reglas generales abstractas sin considerar todos los hechos probados. El análisis racional "no puede sustituirse con una loa a la Carta de Derechos. No es cuestión de ser o no ser 'liberal', es cuestión de elaborar jurisprudencia de frente a la realidad". *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19, 45 (1964), opinión disidente del Juez Asociado Señor Rigau.

Por los fundamentos expuestos, revocaríamos la resolución del Tribunal Superior, Sala de Carolina.