# 96 DTA 114

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

EL PUEBLO DE PUERTO RICO
Peticionario

v.

ISAIAS MORALES CRUZ
Acusado-Recurrido

Núm. KLCE-95-00985

San Juan, Puerto Rico, a 8 de agosto de 1996

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas

Urgell Cuebas, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

El 5 de diciembre de 1995 el Pueblo de Puerto Rico, representado por el Procurador General, presentó una Petición de *certiorari* para revisar una Resolución emitida el 8 de noviembre de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual se declaró con lugar una solicitud de supresión de evidencia presentada por el recurrido, Isaías Morales Cruz.

El 10 de enero de 1996 expedimos el auto de *certiorari* y ordenamos al peticionario someter una exposición narrativa de la prueba oral presentada en la vista de supresión de evidencia. En adición, dispusimos para que en la eventualidad de que las partes no se pudieran poner de acuerdo sobre la exposición narrativa, se re-grabasen los procedimientos y se presentase la transcripción de la prueba oral. Posteriormente, el Procurador General solicitó se ordenara la regrabación de los procedimientos lo cual autorizamos mediante Resolución del 5 de febrero de 1996.

Habiéndose presentado la transcripción correspondiente y los alegatos de las partes, estamos en posición de resolver el recurso instado. Procedemos a confirmar la resolución recurrida.

Los hechos e incidencias procesales que dan lugar a la solicitud de *certiorari* en este caso no están en controversia.

Al recurrido, Isaías Morales Cruz, se le imputó haber infringido los Arts. 6 y 8 de la Ley de Armas y las Secs 5-901, 3-301 de la Ley de Vehículos y Tránsito. 25 L P.R A secs. 416 y 418; 13 L.P.R.A. secs. 1071 y 721.

El 10 de agosto de 1995 el recurrido presentó una moción de supresión de evidencia ante el tribunal de instancia, la cual fue discutida en una vista celebrada el siguiente 8 de noviembre. En la vista, declaró por parte del Ministerio Público el policía estatal, Pedro Rodríguez López, el cual fue contrainterrogado por la defensa.

De la transcripción del testimonio vertido por el policía Rodríguez López en la vista celebrada y la declaración jurada ofrecida por éste el 27 de junio de 1995 en la Oficina de Investigaciones y Procesamiento Criminal, se desprenden los siguientes hechos:

El 31 de mayo de 1995, aproximadamente a las 11:30 de la noche, los policías Pedro Rodríguez López y Harvey González se encontraban prestando un patrullaje preventivo en un vehículo oficial rotulado en las inmediaciones de la intersección de las avenidas José Celso Barbosa y Jesús T. Piñero, cuando observaron un vehículo marca Mitsubishi, azul, con tinte en los cristales, que rebasó un semáforo rojo.

Acto seguido, los policías activaron el biombo y la sirena de la patrulla, procediendo a detener el vehículo frente al R.O.T.C. de la Universidad de Puerto Rico. Una vez detenido, el policía Rodríguez López le indicó a los ocupantes, a través del altoparlante del vehículo oficial, que se desmontaran. Estos se bajaron del vehículo, resultando ser el recurrido la persona que conducía. También, viajaba como pasajera en el asiento delantero una dama, la cual no fue identificada.

Luego de que las personas se bajaran del vehículo, el policía Rodríguez López se acercó al conductor y le solicitó la *"registración"* del vehículo y la licencia de conducir.

Este le hizo entrega de unos boletos de tránsito vencidos y le indicó que no encontraba la misma. El policía le solicitó que buscara bien dentro del vehículo. El recurrido dejó la puerta del conductor abierta y se fue por el lado del pasajero y abrió la gaveta donde comenzó a buscar los documentos.

Por ser crucial a la determinación judicial en este caso el interrogatorio y la declaración jurada del policía sobre los hechos que motivan la solicitud de supresión de evidencia, a continuación transcribimos las partes pertinentes:

*"TESTIGO: Deja la puerta abierta y se va por el lado del pasajero, y abre la gaveta y empieza a tener armas, él me indica que no (no se entiende) entonces arresto al individuo haciéndole las advertencias de rigor."*

Más adelante la defensa interroga al policía:

*"DEFENSA: Y lo cierto es que ya los individuos estaban fuera del vehículo.*

*TESTIGO: Sí estaban fuera del vehículo.*

*DEFENSA: ¿Verdad que sí? Inclusive, antes de que usted haga un registro al vehículo, diferente a lo que usted dice en la declaración jurada, pero nos referimos al informe, usted dice que usted los pone bajo arresto, y allí estaba su compañero, ¿quién es Harvey?*

*TESTIGO: Harvey González.*

*DEFENSA: ¿Verdad que sí? Y estaban bajo la custodia de Harvey.*

**TESTIGO:** *No.*

**DEFENSA:** *Bueno, si usted estaba, estaba registrando el vehículo, usted los arrestó, ¿bajo la custodia de quién estaban?*

**TESTIGO:** *Bueno, sí, del compañero Harvey.*

**DEFENSA:** *¿Verdad que estaban bajo la custodia del compañero Harvey?*

**TESTIGO:** *Sí."*

Luego de escuchados los argumentos de las partes, el tribunal de instancia declaró con lugar la moción de supresión de evidencia. Este basó su decisión en que al recurrido debieron habérsele hecho las advertencias de ley, cuando el policía se percató de las balas y antes de la admisión que éste hizo a los efectos de que no tenía licencia de portar armas y que no era policía.

En la petición de *certiorari* el Procurador General señala que erró el tribunal de instancia al declarar con lugar la moción de supresión de evidencia presentada por el recurrido y *"resolver que la policía venía obligada a hacer las advertencias de ley al imputado tan pronto advierte la presencia de balas en la consola del automóvil que era conducido por éste. Ello, a pesar de que la posesión de balas per se no constituye conducta punible por ley. "*

## II

La norma constitucional es que antes de que se produzca un registro, debe obtenerse una orden de un magistrado para efectuar el mismo. Está firmemente establecido que todo registro, allanamiento e incautación llevado a cabo sin orden judicial previa, se presume irrazonable y por ende, inválido. *Pueblo v. Malavé González,* 120 D.P.R. 470, 476 (1988); *Pueblo v. Falú Martínez,* 116 D.P.R. 828 (1986); *Pueblo v. Lebrón,* 108 D.P.R. 324 (1979). La protección contra registros irrazonables contenida en la Sec. 10 del Art. II de la Constitución de Puerto Rico, se extiende a los vehículos de motor. *Pueblo v. Sosa Díaz,* 90 D.P.R. 622 (1964); *Pueblo v. Acevedo Escobar,* 112 D.P.R. 770 (1982).

Sin embargo, existen situaciones particulares donde no se puede obtener la orden judicial previa, correspondiéndole al Ministerio Público rebatir la presunción de invalidez, demostrando que el registro realizado fue uno legal y razonable. *Pueblo v. Narváez Cruz,* 121 D.P.R. 429 (1988); *Pueblo v. Vázquez Méndez,* 117 D.P.R. 170 (1986.) En estos casos, el Estado tiene que demostrar los hechos particulares que justifiquen la intervención policial. *Pueblo v. Rivera Colón,* 128 D.P.R. ___ (1991), **91 JTS 61**; *Pueblo v. Castro Rosario,* 125 D.P.R. 164 (1990); *Pueblo v. Rivera Rivera,* 117 D.P.R. 283 (1986); *Pueblo v. Del Río,* 113 D.P.R. 684 (1982).

En relación al uso del automóvil y la intervención policíaca con éste, en el caso de *Pueblo v. Malavé González,* 120 D.P.R. 470, 479-480 (1988), el Tribunal Supremo expresó lo siguiente:

*"El uso del automóvil está altamente reglamentado precisamente por su importancia en nuestra sociedad y por el interes del Estado en codificar las reglas mínimas que eviten accidentes en las carreteras. En esta epoca el automóvil constituye no solamente un medio principal de transportación de muchas familias, sino también para algunos el instrumento de trabajo. Al delimitar el alcance de la excepción a la regla general contra registros sin orden judicial tenemos que evitar el debilitamiento de las garantías del Art. II, Sec. 10 de la Constitución de Puerto Rico, supra. A igual conclusión llego el Tribunal Supremo federal recientemente:*

*"El viaje en automóvil es un modo de transportación básico, divertido y a menudo necesario, desde y hacia el hogar, el lugar de trabajo y las actividades recreativas. Muchas personas invierten más horas al día viajando en automóviles que caminando por las calles. Sin duda, muchos se sienten más seguros y en mayor intimidad al viajar en automóvil de lo que se sienten al exponerse mediante modos de transportes peatonales o de otra índole. Si los individuos estuviesen sujetos a la irrestricta intrusión gubernamental cada vez que entraran en un automóvil, la seguridad garantizada por la Décimocuarta Enmienda se vería seriamente cincunscrita. Según se reconoció en Terry v. Ohio,*

© 1996 PUBLICACIONES JTS®™ — LUIGGI ABRAHAM — EDITOR

*supra, la gente no es despojada de todas las protecciones de la Décimocuarta Enmienda cuando salen de sus casas a las aceras públicas. Tampoco se les despoja de esos intereses cuando se salen de la acera y entran en sus automóviles."* (Traducción nuestra). *Delaware v. Prouse* 440 U S 648, 662-663 (1979).

Ahora bien, no podemos ignorar que dada su movilidad el automóvil en ocasiones es el medio utilizado por los delincuentes para sus actividades ilícitas y que con frecuencia es el producto del delito. Ante este cuadro, no es tarea fácil para los tribunales establecer los parámetros de la Sec. 10.

La colisión entre el derecho a la intimidad y la protección indebida del delincuente es particularmente dramática durante las intervenciones policíacas en la vía pública motivadas por una violación a las leyes de tránsito. Véanse: Nota, *Warrantless Vehicle Searches and the Fourth Amendment: The Burger Court Attacks the Exclusionary Rule,* 68 Cornell L. Rev. 105 (1982); Nota, *Lawfulness of Search of Motor Vehicle Following Arrest for Traffic Violations,* 10 A.L.R.3d 314; Comentario, *New Limits on Police Vehicle Searches in Washington,* 60 Wash. L. Rev. 177 (1984); Comentario, *Search Incident to Arrest for Minor Traffic Violations,* 11 The Am. Crim. L. Rev. 801 (1973). A diario cientos de ciudadanos cometen infracciones menores de tránsito y la Policía se enfrenta a múltiples situaciones conflictivas con conductores. Tanto los padres en camino a la escuela para llevar a los niños y continuar a sus trabajos, como los delincuentes que huyen del sitio del crimen, utilizan el automóvil como medio principal de transporte.

En adición, se ha resuelto que la protección contra registros, allanamientos e incautaciones irrazonables cuando se trata de vehículos de motor, es menor que la aplicable a las personas y el hogar. *Pueblo v. Vargas Delgado,* 105 D.P.R. 335, 339 (1976); *Pueblo v. Malavé González, supra,* 478.

En el caso de *Pueblo v. Cruz Torres,* 137 D.P.R. ___ (1994), **94 JTS 122**, el Tribunal Supremo pasó juicio nuevamente sobre los principios que gobiernan los registros, allanamientos e incautaciones sin previa orden judicial. En éste, se mencionan algunas de las situaciones en que la orden judicial previa resulta innecesaria. A la pág. 201, se recogen las siguientes:

*"A esos efectos, la jurisprudencia ha reconocido, entre otras situaciones, que la orden judicial previa resulta innecesaria: cuando la evidencia se encuentra a plena vista, Pueblo v. Dolce, 105 D.P.R. 170 (1976); cuando la evidencia es arrojada o abandonada, Pueblo v. Lebrón, ante; cuando la evidencia es obtenida en el transcurso de una persecución, Pueblo v. Riscard, 95 D.P.R. 405 (1967); cuando la evidencia es obtenida en un registro administrativo en una actividad altamente reglamentada por el Estado, E.L.A. v. Coca Cola, ante; y cuando ha mediado consentimiento para el registro, Pueblo v. Narváez Cruz, 121 D.P.R. 429 (1988); Pueblo v. Falú Martínez, ante."*

### III

Pasemos ahora a analizar el narrativo del testimonio del agente del orden público, antes transcrito, a la luz del derecho aplicable.

Aunque el tribunal de instancia basó su decisión para declarar con lugar la moción de supresión de evidencia en que al recurrido debieron habérsele hecho las advertencias de ley al percatarse el policía de las balas, no estamos obligados a seguir dicho razonamiento, pues en este caso, por otros fundamentos, procedía la moción de supresión de evidencia. *Zorniack Air Servs. v. Cessna Aircraft Co.,* 132 D.P.R. ___, (1992), **92 JTS 167.** Veamos.

De la transcripción de la prueba oral, así como de la declaración jurada del policía Rodríguez López, surge que cuando se llevó a cabo el registro del vehículo y se encontró el arma, el recurrido ya había sido arrestado y estaba bajo la custodia y vigilancia del otro agente del orden público. No representaba peligro alguno para los agentes en ese momento o que la evidencia pudiera ser destruida o ocultada. Tampoco se trata de una situación donde la evidencia se observó a plena vista, o que la misma estuviese al alcance inmediato del recurrido, las cuales pudiesen justificar el registro y allanamiento, según las normas establecidas, *supra.* Los hechos de este caso se asemejan a los de *Pueblo v. Malavé González, supra,* donde se efectuó un registro sin orden judicial, luego de que los agentes del orden público arrestaran al conductor del vehículo, por razón de haber observado, a plena

vista, un sobre en el asiento que aparentaba ser sustancias controladas. En dicho caso, el Tribunal Supremo resolvió que fue irrazonable el registro del interior del vehículo sin orden judicial.

A la luz de los hechos de este caso y las circunstancias particulares relatadas, no existían motivos suficientes para convertir el registro e incautación del arma de fuego en uno válido.

## IV

Por las consideraciones anteriores, se confirma la resolución del Tribunal de Primera Instancia, Sala Superior de San Juan, que declaró con lugar la moción de supresión de evidencia.

Regístrese y notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General