EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>José A. López Colón<br><br>Peticionario | Certiorari<br><br>2018 TSPR 89<br><br>200 DPR \_\_\_\_ |

Número del Caso: CC-2014-767

Fecha: 11 de mayo de 2018

Tribunal de Apelaciones:

> Región Judicial de Mayagüez-Aguadilla.

Abogados de la parte peticionaria:

> Lcdo. Ivandeluis Miranda Vélez
> Lcdo. Jesús Miranda Díaz.

Oficina de la Procuradora General:

> Lcda. Margarita Mercado Echegaray
> Procuradora General.
>
> Lcda. Daphne M. Cordero Guilloty,
> Procuradora General Auxiliar.

Materia: Derecho constitucional/Derecho procesal penal – Expectativa de intimidad sobre el contenido digital de un teléfono celular de uso personal. Criterios para determinar si un tercero puede consentir al registro de un teléfono celular del cual es titular, pero es utilizado por otra persona.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                          CC-2014-767     Certiorari

José A. López Colón

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 11 de mayo de 2018.

En esta ocasión, nos corresponde determinar si una persona, quien no es el titular de la cuenta, tiene una expectativa razonable de intimidad sobre el contenido digital de su teléfono celular de uso personal.

Además, debemos evaluar si un tercero puede consentir al registro de un teléfono celular del cual es el titular, a pesar de ser utilizado por otra persona.

I

El Ministerio Público presentó unas denuncias contra el Sr. José A. López Colón

(peticionario) por violación al Art. 95[1] del Código Penal de 2012 e infracciones a los Arts. 5.04[2] y 5.15[3] de la Ley de Armas del 2000. En específico, se le imputó haber causado la muerte del Sr. Nelson L. Colón Ugarte al dispararle con un arma de fuego para la cual no tenía licencia, ello como resultado de súbita pendencia o arrebato de cólera. En esa misma fecha se determinó causa probable para arresto y se fijó fianza en cada uno de los delitos mencionados. Más adelante, el Ministerio Público presentó las acusaciones contra el peticionario[4] y el Tribunal de Primera Instancia señaló fecha para juicio.

Así las cosas, la Defensa solicitó la supresión de una evidencia que el Ministerio Público se proponía utilizar en los procedimientos contra el peticionario. En particular, expresó que se trataba de "un video que [se] obtuvo mediante la incautación de un teléfono celular, de uso exclusivo de[l] [peticionario] y otro captado por las cámaras de seguridad de la casa del [peticionario], estando ausente, arrestado al momento de la ocupación, sin consentir en ningún momento".[5] Esto es, la Policía de Puerto Rico ocupó unos artefactos electrónicos (un

---

[1] Homicidio, 33 LPRA sec. 5144. Al momento de los hechos, el delito se conocía como "homicidio", más adelante mediante la Ley Núm. 246-2014 se modificó el término a "asesinato atenuado".

[2] Portación y uso de armas de fuego sin licencia, 25 LPRA sec. 458c.

[3] Disparar o apuntar armas, 25 LPRA sec. 458n.

[4] *Acusaciones*, Apéndice de la Petición de *certiorari*, págs. 30-35.

[5] *Moción de supresión de evidencia*, Apéndice de la Petición de *certiorari*, pág. 36.

teléfono celular y una caja "DVR" de cámaras de seguridad)[6] en la residencia del peticionario, de los cuales se obtuvo vídeos y fotos que el Ministerio Público pretendía utilizar en los procesos.

En su petición de supresión de evidencia, la Defensa planteó que la incautación del teléfono celular que dejó el peticionario en su casa al ser arrestado y conducido al cuartel constituyó un registro ilegal. En cuanto al asunto del consentimiento prestado por un tercero, la Defensa sustentó su postura en lo expuesto en Pueblo v. Ramos Santos, 132 DPR 363, 371 (1992), referente a que "[d]espués de todo, el derecho a que no se lleven a cabo registros y allanamientos irrazonables, sin orden judicial previa, es personal y sólo puede renunciar a él la persona a cuyo favor se da, y no un tercero a su nombre".

El Ministerio Público solicitó al foro de instancia que rechazara de plano la moción de supresión de evidencia debido a que era una petición tardía.

Examinados los argumentos de las partes, el Tribunal de Primera Instancia denegó la moción de supresión de evidencia al expresar lo siguiente:

> En el presente caso no está en controversia que los artefactos ocupados eran de uso común de la pareja. El testimonio de la señora Colón demostró que la DVR y las cámaras de seguridad habían sido adquiridas en común por ella y el acusado. Además, estableció que dichos artefactos electrónicos eran de uso común de la pareja y para el beneficio y

---

[6] El término "DVR" significa "Digital Video Recorder".

disfrute de ambos. Nada en la prueba demostró que el acusado tuviera una expectativa de intimidad frente a la señora Colón en cuanto a las cámaras de seguridad o la DVR. Siendo este el caso la señora Colón tenía autoridad sobre el contenido de la grabación y por lo tanto podía consentir a su registro.

En el caso del celular la señora Colón testificó y no es un hecho en controversia que la cuenta que brindaba servicio telefónico a dicho artefacto estaba a su nombre. Por lo tanto, debe entenderse que esta tenía autoridad sobre el celular y sobre su contenido por lo cual podía autorizar a su registro.

En cuanto al consentimiento la señora Colón testificó que los agentes no actuaron de manera intimidante, sino que más bien fueron cordiales. Que solicitaron permiso para llevarse los aparatos electrónicos que registraron y que ella voluntariamente consintió a dicho registro y ocupación.

Siendo pues que la señora Colón consintió sin mediar coacción al registro y la ocupación de los artefactos sobre los cuales tenía autoridad por ser la propiedad de aquellos no procede la supresión de la evidencia.

Es decir, el Tribunal de Primera Instancia sustentó su decisión en que no estaba en controversia que los equipos electrónicos incautados eran de uso común del matrimonio López-Colón y fueron adquiridos para el beneficio y disfrute de ambos cónyuges. Ante esto, concluyó que la esposa del peticionario sí tenía autoridad respecto al contenido de las grabaciones almacenadas en la caja "DVR" de las cámaras de seguridad, por cuanto podía consentir a su registro. De igual manera, determinó que no se presentó prueba que sustentara que al peticionario le cobijaba una expectativa de intimidad sobre el contenido digital de su teléfono celular de uso personal.

Inconforme con la determinación del foro de instancia, la Defensa solicitó reconsideración argumentando que "[l]a expectativa de intimidad que necesita el [peticionario] como ciudadano para exigir una Orden judicial para intervenir con sus objetos y documentos es frente al Estado y no frente a su esposa. Por tanto, el hecho de que compartan titularidad de los bienes por la naturaleza ganancial, relación de matrimonio, no reduce lo reconocido por la [C]uarta enmienda en cuanto a la expectativa de intimidad de nuestro representado".[7] La Defensa añadió que "[p]retender que luego de suscitarse una escena violenta en la que muere el hermano de la Sra. Madeline Colón a manos de su esposo José A. López Colón permita a ésta prestar un consentimiento válido, resulta ambicioso pero más aún, el pensar que la naturaleza ganancial de los bienes ocupados permita a ésta renunciar a la expectativa de intimidad personalísima perteneciente al ciudadano José A. López Colón, su marido, entendemos [n]o es conforme a derecho".[8]

Así las cosas, el foro de instancia declaró "no ha lugar" la petición de reconsideración.[9] Insatisfecha con la decisión del foro de instancia, la Defensa presentó

---

[7] *Moción de reconsideración*, Apéndice de la Petición de *certiorari*, pág. 54.

[8] Íd., pág. 55.

[9] La copia de la notificación de la Resolución/Orden se archivó en los autos el 18 de junio de 2014.

una Petición de *certiorari* junto a una moción en auxilio de jurisdicción ante el Tribunal de Apelaciones. Por su parte, la Oficina de la Procuradora General también presentó su posición.

Evaluados los escritos de las partes, el foro apelativo intermedio confirmó la decisión recurrida.[10] El Tribunal de Apelaciones determinó que el foro de instancia no erró al denegar la petición de supresión de evidencia. En particular, entendió que el peticionario no tenía una razonable y legítima expectativa de intimidad con relación al teléfono celular incautado y, además, resolvió que sí hubo un consentimiento voluntario y válido por parte de su esposa, la Sra. Madeline Colón Ugarte (señora Colón Ugarte), debido a que ésta tenía la facultad para permitir la ocupación y el registro del mencionado teléfono celular.

Inconforme con la determinación del foro apelativo intermedio, la Defensa recurrió ante esta Curia mediante una Petición de *certiorari* y una moción en auxilio de jurisdicción. En su recurso, señaló la comisión de los errores siguientes:

> (1) Erró el Honorable Tribunal de Apelaciones al confirmar al Tribunal de Instancia al no suprimir la información obtenida del teléfono celular ocupado en el presente caso a pesar de que la prueba que desfiló sin lugar a dudas demostró que dicho teléfono celular era de uso exclusivo del peticionario y éste no consintió a su ocupación.

---

[10] La copia de la notificación de la Resolución se archivó en los autos el 18 de agosto de 2014.

(2) Erró el Honorable Tribunal de Apelaciones al confirmar al Tribunal de Instancia al validar la ocupación de un teléfono celular por el mero hecho de que la persona que consintió a la ocupación del mismo es la dueña registral de la cuenta de dicho teléfono celular y no su usuaria, sino un tercero que no consintió a su ocupación y registro.

(3) Erró el Honorable Tribunal de Apelaciones al confirmar al Tribunal de Instancia al validar un registro sin orden del teléfono celular del peticionario sin que mediare consentimiento expreso ni se solicitara una orden de registro al tribunal.

Expedido el recurso y estando perfeccionado el asunto ante nuestra consideración, resolvemos.

II

En los méritos de la controversia, la Defensa plantea que el Estado realizó el registro del contenido digital del teléfono celular basado en el alegado consentimiento válido de un tercero con autoridad, en este caso la esposa del peticionario.[11] Ante esto, argumenta que -conforme a la jurisprudencia federal y estatal- la esposa del peticionario no cumplía con los criterios de tercera persona con autoridad para disponer del teléfono celular en controversia, por lo que niega que ésta hubiese brindado un consentimiento válido para el registro de dicho artefacto. Sobre este asunto, la Defensa añade que "[d]e la transcripción de la prueba, no surge que la [esposa del peticionario] autorizara el registro del celular, simplemente lo entregó a pedido de

---

[11] En su Alegato, la Defensa aclaró que aunque la moción de supresión de evidencia presentada ante el Tribunal de Primera Instancia versó sobre la ocupación y el registro de un teléfono celular y una caja "DVR" de cámaras de seguridad, sin que él consintiera a ello, tanto ante el Tribunal de Apelaciones como ante esta Curia solo cuestiona la determinación del foro de instancia en cuanto a la ocupación del teléfono celular y el registro de su contenido, mas no así respecto a las imágenes captadas por las cámaras de seguridad.

la [P]olicía y fue luego que se registró en una unidad técnica de la [P]olicía".[12]

En cuanto al hecho de que la esposa del peticionario fuera la titular de la cuenta del teléfono celular, la Defensa indica que ello no cambia en nada la expectativa de intimidad que tenía el peticionario respecto a la información contenida en la cuenta. Añade que "**[e]n este tipo de caso no es la titularidad de la cuenta lo que debe importar, sino la autoridad o uso común con el celular en cuestión, pues la titularidad de la cuenta en nada implica autoridad común sobre el aparato**". (Énfasis en el original).[13]

En conclusión, la Defensa expone que no hubo un consentimiento válido de la esposa del peticionario en relación con la ocupación del teléfono celular de su marido y que no se demostró que ella tuviera autoridad común sobre dicho artefacto. En específico, esboza que el teléfono celular era de uso exclusivo del peticionario y, además, no se demostró que la esposa de éste tuviera acceso al equipo. Ante esto, reitera que el agente policíaco no tenía motivos fundados para pedirle a la esposa del peticionario poder ocupar el teléfono celular y luego registrarlo sin una orden judicial. Sobre esto, plantea que "[l]o único que el agente tenía al momento de ocupar el celular era lo aseverado por la [esposa del

---

[12] Alegato de la parte peticionaria, pág. 21.

[13] Alegato de la parte peticionaria, pág. 25.

peticionario] de que entendía que el peticionario estaba grabando y tirando fotos con el celular. El agente no vio nada incriminatorio en su presencia".[14] Por todo lo cual, expresa que la ocupación y posterior registro del teléfono celular fueron contrarios a derecho, ya que nada impedía que el agente policíaco solicitara una orden de registro y más cuando de la prueba desfilada no surgió prueba que demostrara que existía peligro de perder la "data" del teléfono celular.

Por su parte, la Procuradora General fundamentó su Alegato en que la esposa del peticionario le entregó voluntariamente el teléfono celular al agente policíaco. A esos efectos, sostuvo que de un examen minucioso de la transcripción de la prueba surge que fue la esposa del peticionario quien le informó al agente que el celular contenía el video del crimen. Así, cuando el agente le solicitó su consentimiento para incautar el celular, como ya lo había hecho con las cámaras de seguridad, la señora Colón Ugarte respondió de forma inmediata y entregó el equipo sin reservas. A su entender, era razonable concluir que el consentimiento otorgado para incautar el celular se extendía al registro del mismo.

Por otro lado, en cuanto al argumento esbozado por el peticionario sobre que la esposa no tenía autoridad común para consentir, la Procuradora General indicó que la señora Colón Ugarte no solo era la copropietaria del

---

[14] Alegato de la parte peticionaria, pág. 26.

teléfono celular cuya ocupación y registro es impugnada, sino que era la titular de la cuenta de servicio de telefonía. A esos fines, sostuvo que, a pesar de que el esposo utilizaba el teléfono celular, la cuenta estaba registrada bajo su nombre lo que le da autoridad para disponer del celular y autorizar su ocupación y su registro. Por lo tanto, entiende que nada impedía que transfiriera su dominio al agente del orden público.

En fin, la Procuradora General sostuvo que este caso no se trata de si el peticionario usaba exclusivamente el celular, sino de si su esposa tenía derecho a utilizarlo, especialmente cuando la cuenta de servicio estaba registrada a su nombre y el equipo fue adquirido con aportaciones de ambos cónyuges.

III

A. La protección contra registros, incautaciones y allanamientos irrazonables

Tanto la Constitución de Puerto Rico como la Constitución de Estados Unidos contienen disposiciones que protegen a los ciudadanos contra registros e incautaciones irrazonables de sus hogares, vehículos, efectos personales o cualquier propiedad o lugar en el que el ciudadano tenga una expectativa razonable a la intimidad.[15] A esos efectos, la Sec. 10 del Art. II de la

---

[15] Véase E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. I, pág. 181.

Constitución de Puerto Rico, LPRA, Tomo 1, establece lo

siguiente:

> No se violará el derecho del pueblo a la
> protección de sus personas, casas, papeles y
> efectos contra registros, incautaciones y
> allanamientos irrazonables.
> No se interceptará la comunicación telefónica.
> Sólo se expedirán mandamientos autorizando
> registros, allanamientos o arrestos por la
> autoridad judicial, y ello únicamente cuando
> exista causa probable apoyada en juramento o
> afirmación, describiendo particularmente el
> lugar a registrarse, y las personas a detenerse
> o las cosas a ocuparse.
> Evidencia obtenida en violación de esta sección
> será inadmisible en los tribunales.

Por su parte, la Cuarta Enmienda de la Constitución

de Estados Unidos, LPRA, Tomo 1, dispone que:

> No se violará el derecho del pueblo a la
> seguridad de sus personas, hogares, documentos
> y pertenencias, contra registros y
> allanamientos irrazonables, y no se expedirá
> mandamiento, sino en virtud de causa probable,
> apoyado por juramento o promesa, y que describa
> en detalle el lugar que ha de ser allanado y
> las personas o cosas que han de ser detenidas o
> incautadas.

El propósito de estas disposiciones es proteger el

derecho a la intimidad y dignidad del individuo, amparar

sus documentos y pertenencias frente a actuaciones

irrazonables del Estado e interponer la figura del juez

para ofrecer una mayor garantía de razonabilidad a la

intervención con los ciudadanos.[16]

---

[16] Pueblo v. Báez López, 189 DPR 918, 927 (2013); Pueblo v. Díaz, Bonano, 176 DPR 601, 611-612 (2009); Blassini et als. v. Depto. Rec. Naturales, 176 DPR 454, 463-464 (2009); Pueblo v. Martínez Torres, 120 DPR 496, 500 (1988); ELA v. Coca Cola Bott. Co., 115 DPR 197, 207 (1984).

Ahora bien, cuando se pretenda efectuar un registro o allanamiento, como regla general, será necesario obtener una orden judicial previa para ello.[17] A esos efectos, cuando se alega una violación al derecho constitucional contemplado en la Sec. 10 del Art. II de nuestra Constitución, *supra*, es necesario determinar si ocurrió un registro que haya infringido la expectativa razonable de intimidad que se le reconoce a un individuo sobre el objeto registrado.[18] El ámbito de la prohibición protege a todos, tanto al sospechoso o conocido ofensor como al inocente, y se extiende al lugar que sea objeto del registro.[19]

Así, en primer lugar es necesario determinar si la persona tiene una expectativa razonable de intimidad dentro de las circunstancias particulares que rodean el caso y si ese derecho está reconocido por nuestra sociedad.[20] La exposición del objeto al público determinará la protección constitucional de éste.[21] Por tanto, un lugar u objeto estará protegido por el

---

[17] Pueblo v. Báez López, supra; Pueblo v. Malavé González, 120 DPR 470, 477 (1988).

[18] Pueblo v. Báez López, supra, págs. 928-929; Pueblo v. Ortiz Rodríguez, 147 DPR 433, 442-443 (1999).

[19] Pueblo v. Miranda Alvarado, 143 DPR 356, 363 (1997); Pueblo v. Acevedo Escobar, 112 DPR 770, 775-776 (1982).

[20] Weber Carrillo v. ELA, 190 DPR 688, 701 (2014); Pueblo v. Báez López, supra, pág. 929; Pueblo v. Ortiz Rodríguez, supra. Véanse, además: Smith v. Maryland, 442 US 735, 740-741 (1979); Katz v. United States, 389 US 347 (1967).

[21] O.E. Resumil de San Filippo, Derecho procesal penal, New Hampshire, Ed. Equity, 1990, T. 1, pág. 205.

mencionado precepto constitucional de acuerdo a la naturaleza de la intrusión gubernamental, la expectativa de intimidad del ciudadano y el método investigativo utilizado.[22]

En segundo lugar, se deberá establecer un balance entre la expectativa de intimidad del ciudadano protegida por la garantía constitucional y los intereses públicos que hayan motivado la actuación estatal.[23] Para ello, habrá que considerar "la pugna entre la protección de nuestros ciudadanos y el interés de la sociedad por las asolaciones perpetuadas por el crimen".[24]

B. La expectativa de intimidad en los teléfonos celulares

En Riley v. California, 573 US __ (2014), el Tribunal Supremo de Estados Unidos atendió una controversia relacionada a la expectativa de intimidad (grado de intromisión) que tiene una persona sobre un teléfono celular en comparación a otros objetos que pueda tener consigo al momento de un arresto. Específicamente, indicó que **los teléfonos celulares se diferencian tanto cualitativa como cuantitativamente de otros objetos que pueda tener una persona consigo en la referida**

---

[22] Pueblo v. Báez López, supra; Pueblo v. Rivera Colón, 128 DPR 672, 683 (1991).

[23] Pueblo v. Báez López, supra; Pueblo v. Díaz, Bonano, supra, pág. 613; Pueblo v. Yip Berríos, 142 DPR 386, 409 (1997); Pueblo v. Dolce, 105 DPR 422, 434-435 (1976).

[24] Pueblo v. Báez López, supra.

**circunstancia.**[25] **Ello, debido a la gran cantidad de**

**información que almacenan estos equipos.**

Así, el máximo foro federal describió estos aparatos

electrónicos de la siguiente forma:

> The term "cell phone" is itself misleading
> shorthand; many of these devices are in fact
> minicomputers that also happen to have the
> capacity to be used as a telephone. They could
> just as easily be called cameras, video
> players, rolodexes, calendars, tape recorders,
> libraries, diaries, albums, televisions, maps,
> or newspapers.[26]

Por otro lado, el Tribunal Supremo federal explicó

que "antes de los teléfonos celulares, el registro a una

persona estaba limitado a las realidades físicas y

tendía, en general, a constituir solo una intrusión

restringida a la intimidad". (Traducción nuestra).[27] Sin

embargo, esa intromisión no está limitada de la misma

forma cuando se trata de teléfonos celulares. Ello pues,

un teléfono celular puede tener la capacidad para

almacenar distintos tipos de información tales como

fotografías, mensajes con imágenes, mensajes de texto, el

historial de navegación por Internet, calendario, lista

de números telefónicos, entre otros.[28] A esos efectos, el

Tribunal Supremo federal expresó lo siguiente:

---

[25] Riley v. California, 573 US ___ (2014), 134 S.Ct. 2473 (2014).

[26] Íd.

[27] Riley v. California, supra. Véase, además, Kerr, Foreword: Accounting for Technological Change, 36 Harv. J.L. & Pub. Pol'y 403, 404-405 (2013).

[28] Riley v. California, supra. Véase, también, United States v. Flores-López, 670 F.3d 803, 806 (C.A.7 2012).

The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information —an address, a note, a prescription, a bank statement, a video— that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

. . . . . . . .

Finally, there is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception.

. . . . . . . .

Allowing the police to scrutinize such records on a routine basis is quite different from allowing them to search a personal item or two in the occasional case.[29]

Además, en Riley v. California, supra, el máximo foro federal indicó lo siguiente:

Indeed, **a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house**: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form[,] unless the phone is. (Énfasis suplido).[30]

---

[29] Riley v. California, supra.

[30] Íd.

C. El registro consentido por un tercero

Es norma conocida que el hecho de que un objeto haya sido incautado sin una orden previa de un tribunal, por sí solo, no conlleva la inadmisibilidad de la evidencia obtenida.[31] Un registro sin una orden judicial activa una presunción de que éste fue irrazonable e inválido.[32] No obstante, el Estado puede demostrar que las circunstancias particulares en ese caso justificaron la intervención policial sin la referida orden, constituyéndose así alguna de las excepciones a la norma general.[33] Algunas de estas situaciones excepcionales son las siguientes: (1) un registro incidental a un arresto legal; **(2) un registro consentido voluntariamente de forma expresa o implícita**; (3) un registro en situación de emergencia; (4) una evidencia ocupada en el transcurso de una persecución; (5) una evidencia a plena vista; (6) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo por el olfato; (7) una evidencia arrojada o abandonada; (8) un registro o allanamiento de una estructura abandonada; (9) una evidencia obtenida durante un registro administrativo, siempre que se cumpla con las

---

[31] Pueblo v. Báez López, supra, 930.

[32] Íd.

[33] Pueblo v. Báez López, supra; Pueblo v. Blase Vázquez, 148 DPR 618, 632-633 (1999); Pueblo v. Santiago Alicea I, 138 DPR 230, 235 (1995); Pueblo v. Malavé González, 120 DPR 470, 476-477 (1988). Véanse, también: Missouri v. McNeely, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013); Coolidge v. New Hampshire, 403 US 443 (1971).

limitaciones expresadas por este Tribunal en <u>Blassini et als. v. Depto. Rec. Naturales</u>, 176 DPR 454 (2009); (10) un registro tipo inventario, o (11) una evidencia obtenida en un lugar público como resultado de la utilización de canes para olfatear. Cabe destacar que estas excepciones no responden a reglas automáticas y deben examinarse a la luz de los hechos específicos de cada caso.[34]

Como mencionamos, una de las excepciones reconocidas a la protección constitucional contra registros y allanamientos irrazonables ocurre cuando media el consentimiento para el registro.[35] A esos efectos, hemos resuelto que solo el titular del derecho puede válidamente renunciar a éste.[36] La renuncia puede ser expresa o tácita, pero se considerarán los siguientes factores para determinar su validez: (1) si ha habido fuerza o violencia; (2) si el registro se efectuó después de un arresto, y (3) si se encontraban presentes otras personas.[37] Además, para que el consentimiento sea válido es indispensable que sea prestado por la persona que tenga la autoridad para ello y que se haga de manera

---

[34] <u>Pueblo v. Báez López</u>, supra; <u>Pueblo v. Blase Vázquez</u>, supra, pág. 633; <u>Pueblo v. Miranda Alvarado</u>, supra.

[35] <u>Pueblo v. Miranda Alvarado</u>, supra, pág. 364; <u>Pueblo en interés menor N.O.R.</u>, 136 DPR 949 (1994).

[36] <u>Pueblo v. Castro Rosario</u>, 125 DPR 164 (1990); <u>Pueblo v. Narváez Cruz</u>, 121 DPR 429 (1988).

[37] <u>Pueblo v. Miranda Alvarado</u>, supra.

voluntaria, es decir, sin que medie coacción directa o indirecta.[38]

Por otro lado, este Tribunal ha resuelto que la validez del consentimiento prestado para realizar un registro es una cuestión de hecho que se determina haciendo un examen cuidadoso de la totalidad de las circunstancias que rodean el caso.[39] Para ello, habrá que evaluar el ambiente en el cual se presta el consentimiento y las características personales de quien consiente.[40]

Al examinar el ambiente existente cuando se consintió al registro, hay que considerar si la persona que consintió fue amenazada, intimidada físicamente o maltratada por la Policía; si descansó en promesas o representaciones falsas de la Policía; y si se encontraba en un lugar público o aislado.[41] De otra parte, entre las características personales que se examinarán se encuentran: (1) la edad; (2) la inteligencia promedio; (3) la educación; (4) si la persona estaba intoxicada o bajo la influencia de drogas al momento de prestar el consentimiento; (5) si la persona consintió luego de ser informada de su derecho de rehusarse a consentir o

---

[38] Pueblo v. Narváez Cruz, supra, pág. 436.

[39] Pueblo v. Miranda Alvarado, supra; Pueblo v. Santiago Alicea I, supra.

[40] Íd.

[41] Pueblo v. Miranda Alvarado, supra, pág. 364; Pueblo v. Santiago Alicea I, supra, pág. 237.

habérsele dado las advertencias "Miranda"; y (6) si había sido arrestado anteriormente y, por lo tanto, tenía conocimiento de las protecciones que provee el sistema legal a los sospechosos de un delito.[42] Cuando la persona inicialmente no permitió el registro, pero posteriormente lo autorizó, hay que determinar si el permiso fue obtenido ante la amenaza de que si el ciudadano no consentía entonces la Policía obtendría una orden de registro y entraría de todas formas.[43]

Ahora bien, este Tribunal ha reconocido que, en determinadas situaciones y ante la ausencia del titular del derecho, **un tercero puede prestar válidamente su consentimiento para el registro de una propiedad**.[44] Así, en Pueblo v. Narváez Cruz, 121 DPR 429 (1988), adoptamos el criterio establecido por el Tribunal Supremo de Estados Unidos en United States v. Matlock, 415 US 164 (1974), en cuanto a que para consentir válidamente a un registro no se requiere que la persona que presta el consentimiento posea un **interés legal en la propiedad**.[45] Destacamos que lo importante es que posea "autoridad común u otra relación suficiente respecto a la propiedad que habrá de

---

[42] Pueblo v. Santiago Alicea I, supra. Véase, además, U.S. v. Chaidez, 906 F.2d 377 (1990).

[43] Pueblo v. Miranda Alvarado, supra; Pueblo v. Santiago Alicea I, supra.

[44] A manera de ejemplo, hemos sostenido la validez del consentimiento del padre para el registro de la habitación de un hijo menor de edad que no pagaba la renta, Pueblo ex rel. F.J.M.R., 111 DPR 501 (1981), y el consentimiento de la hermana del acusado para el allanamiento de la residencia de éste, Pueblo v. Rivera Romero, 83 DPR 471 (1961).

[45] Véase, además, Pueblo v. Miranda Alvarado, supra, pág. 365.

ser registrada".[46] Específicamente, en United States v. Matlock, supra, pág. 171 esc. 7, se definió el concepto "autoridad común" de la siguiente forma:

> Common authority **is, of course, not to be implied from the mere property interest a third party has in the property.** The authority which justifies the third-party consent **does not rest upon the law of property,** […] **but rests rather on mutual use of the property by persons generally having joint access or control for most purposes,** so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. (Énfasis suplido).

Así, la "autoridad común" no se basa en el derecho de propiedad, sino en el **uso mutuo de los bienes por personas que generalmente tienen acceso o control conjunto sobre la propiedad.** En ese sentido, se entiende que cualquiera de los cohabitantes de una residencia puede consentir al registro del área común bajo su propio derecho y que los demás cohabitantes han asumido el riesgo de que uno de ellos pudiera permitir el registro.[47]

Ahora bien, cuando se determina que un objeto es un efecto personal o que una persona tiene el **uso exclusivo** del mismo, se ha cuestionado si ese hecho de por sí implica que ninguna otra persona puede consentir al registro del área u objeto. Bajo la doctrina de United States v. Matlock, supra, dicha conclusión no elimina el

---

[46] Pueblo v. Narváez Cruz, supra, pág. 437; United States v. Matlock, 415 US 164, 171 (1974).

[47] W. R. La Fave, Search and Seizure, A Treatise on the Fourth Amendment, 4ta ed., Eagan, Ed. West, 2004, pág. 193.

riesgo asumido por la persona que deja el objeto en un lugar al que también tienen acceso otras personas como el cónyuge.[48] Es decir, independientemente del tipo de bien registrado, **lo determinante para que el consentimiento del tercero sea válido serán las circunstancias en las que se dejó el bien**.

Por lo tanto, bajo la doctrina de asunción de riesgo de *Matlock*, el requisito de uso exclusivo no se determina por el solo hecho de que una persona haya convertido en una práctica el uso del área u objeto registrado, sino que se requiere demostrar que al tercero que consiente no tenía el acceso a dicha área u objeto.[49]

---

[48] W. R. La Fave, op. cit. Véanse, además: People v. Stacey, 317 N.E.2d 24 (1974) (La esposa consintió al registro de un gavetero donde su esposo guardaba la ropa. A pesar de que ella no usaba el gavetero, el consentimiento fue válido, ya que nunca se le prohibió el acceso o control del mismo); United States v. Harrison, 679 F.2d 942 (DC Cir. 1982) (La esposa consintió al registro de una caja de efectos personales de ella y de su esposo que se encontraba en el sótano); Welch v. United States, 466 A.2d 829 (DC App. 1983) (La esposa consintió al registro de la oficina de su esposo que se encontraba en el sótano, la cual ella utilizaba en ocasiones y a la cual tenía acceso, ya que las llaves permanecían en la cocina de la casa); People v. Ford, 403 N.E.2d 512 (1980) (La esposa consintió al registro de una caja de herramientas de su esposo que guardaba en el sótano. El consentimiento fue válido, ya que el sótano no estaba cerrado con llave y a la esposa no le habían dado instrucciones de que no podía utilizar las herramientas); Bruce v. State, 375 N.E.2d 1042 (1978) (La esposa consintió al registro de un gavetero, de un armario y de un joyero que solo era usado por su esposo, ya que ella tenía acceso a todas las áreas de la habitación donde se encontraban esos muebles); Pennington v. State, 913 P.2d 1356 (Okl. Crim. App. 1995) (La esposa consintió al registro de una mochila de su esposo, la que se encontraba en el sótano a plena vista y accesible a todos los cohabitantes de la residencia); State v. Gillespie, 569 P.2d 1174 (1977) (La esposa consintió al registro de un abrigo de su esposo que estaba guardado en un armario que usaba toda la familia).

[49] W. R. La Fave, op. cit., pág. 194.

IV

Discutiremos conjuntamente los tres errores señalados por estar relacionados. En esencia, la Defensa sostiene que tanto el Tribunal de Apelaciones como el Tribunal de Primera Instancia erraron al no suprimir la información obtenida del teléfono celular ocupado, a pesar de que dicho teléfono era de uso exclusivo suyo y de que quien consintió al registro fue su esposa.

La controversia en este caso se circunscribe a determinar si el registro del teléfono celular del peticionario fue conforme a Derecho. Para ello, debemos determinar si existía una expectativa razonable de intimidad sobre el contenido digital del teléfono celular y si el consentimiento brindado por la esposa del peticionario fue válido.

En cuanto al primer aspecto, y como mencionamos, actualmente los teléfonos celulares pueden almacenar una gran cantidad de información. Las personas conservan datos sobre los lugares que frecuentan, sus condiciones de salud, los medicamentos que utilizan, los libros, periódicos o revistas que leen, los números telefónicos y direcciones de sus conocidos, entre otra información que podría revelar detalles íntimos y sensitivos de su vida. En ese sentido, como expresó el Tribunal Supremo federal en _Riley v. California_, supra, hoy día un teléfono celular guarda más información de un individuo de lo que éste pudiera conservar en su propia casa. Por ello, un

registro de este tipo podría ser más inquisitivo que un registro de la residencia de una persona.

Por consiguiente, no tenemos duda de que el peticionario tenía una expectativa razonable de intimidad sobre el contenido digital de su teléfono celular de uso personal al momento en que se efectuó el registro sin orden judicial.

En segundo lugar, nos corresponde determinar si el consentimiento brindado por la esposa del peticionario para que la Policía registrara e incautara el teléfono celular de éste fue válido. Como mencionamos, para que un tercero pueda consentir válidamente al registro e incautación de un objeto o lugar perteneciente a otra persona es necesario que el tercero posea "autoridad común" sobre el objeto o lugar que se registrará. Ahora bien, como dispuso el Tribunal Supremo federal en United States v. Matlock, supra, esa "autoridad común" no se refiere a la titularidad del bien, sino al uso mutuo de los bienes por aquellos que generalmente tienen acceso o control conjunto sobre el bien.

En este caso, si bien es cierto que la titular de la cuenta del celular del peticionario era su esposa, ese hecho de por sí no es suficiente para validar el consentimiento brindado a la Policía para que registraran el teléfono celular. Ello es contrario a la doctrina de *Matlock* que fue adoptada por este Tribunal en Pueblo v. Narváez Cruz, supra, que establece el requisito de

"autoridad común" para que el consentimiento de un tercero sea válido. Además, dicha situación tampoco se ajusta a la realidad fáctica que vivimos. Esto pues, hoy día son muchas las personas que poseen teléfonos celulares bajo planes familiares o grupales, en los que una sola persona es el titular de varias cuentas, ya que de esta forma pueden obtener tarifas más bajas. Sin embargo, eso no significa que el titular tenga control o acceso a todos los teléfonos celulares que están incluidos en el plan. De hecho, en ocasiones los usuarios de los teléfonos celulares ni tan siquiera viven en la misma residencia del titular de la cuenta.

Por lo tanto, para determinar si el consentimiento de la esposa del peticionario fue válido es necesario precisar si la esposa tenía "autoridad común" sobre el teléfono celular o si, por el contrario, el peticionario tenía el uso exclusivo del mismo y su esposa no tenía acceso al contenido del teléfono.

Del testimonio de la esposa surge que, aunque la cuenta del teléfono celular estaba a su nombre, el mismo era **usado todo el tiempo por el peticionario**.[50] Ahora bien, como expusimos anteriormente, el requisito de uso exclusivo no se determina por el solo hecho de que una persona haya convertido en una práctica el uso del área u objeto registrado, sino que se requiere demostrar que el tercero que consiente no tenía acceso al área u objeto.

[50] Transcripción de la vista celebrada el 21 de mayo de 2014, pág. 15.

Así, cuando la persona que alega poseer el uso exclusivo del bien no realiza actos afirmativos para proteger su derecho a la intimidad sobre éste, entonces asume el riesgo de que un tercero adquiera autoridad común sobre dicho bien.

En el caso de un teléfono celular, este asunto cobra más importancia aún. La capacidad de almacenamiento y de funciones que tienen estos equipos hace necesario que su usuario proteja la información que su teléfono celular contenga. Así, quien pretende reclamar el uso exclusivo del teléfono celular que excluya la "autoridad común" con el titular de la cuenta, debe haber tomado las debidas precauciones para proteger su derecho a la intimidad sobre el mismo. Para ello, la persona tiene siempre la opción de, en primer lugar, ponerle una contraseña al teléfono y no compartirla con el tercero titular de la cuenta. Además, la persona puede tomar otras medidas como guardarlo en lugares donde el titular de la cuenta no pueda tener acceso al equipo o realizar cualquier acción dirigida a evitar que tal persona pueda usar el teléfono celular y, por ende, no adquiera "autoridad común" sobre el equipo. Si la persona no toma las debidas precauciones y el titular con autoridad común -conforme hemos mencionado- consiente al registro del mismo, dicho consentimiento sería válido. Claro está, dichas circunstancias no serían necesarias cuando la persona que

presta el consentimiento es el usuario exclusivo y tiene a su vez la titularidad del celular.

Así, cuando un tercero, que es el titular del equipo, consiente al registro del contenido digital de un teléfono celular del cual el acusado es el dueño de facto y como tal, quien lo utiliza de ordinario, el Estado deberá probar que no estaban presentes los elementos que de forma no taxativa señalamos anteriormente que, unidos a las demás circunstancias del caso, permitan concluir al tribunal que entre el tercero titular de la cuenta y el dueño de facto existe autoridad común sobre el teléfono celular. De ese modo, la evaluación deberá realizarse caso a caso.

De la prueba presentada en este caso no surge en qué condiciones se encontraba el teléfono celular al momento del registro. Es decir, desconocemos si el aparato tenía una contraseña y, de haberla tenido, no sabemos si el peticionario compartió la contraseña con su esposa o si antes de ser arrestado le dio alguna instrucción específica sobre qué hacer con el teléfono celular, que pueda llevar a pensar a una persona prudente y razonable, que este objetaba el registro del mismo por parte de la Policía. Por ello, **procede devolver el caso al Tribunal de Primera Instancia para que evalúe si el peticionario realizó algún acto dirigido a proteger su derecho a la intimidad sobre el contenido digital de su teléfono celular o si, por el contrario, asumió el riesgo de que**

**su esposa tuviera acceso al equipo y, por lo tanto, pudiera consentir válidamente al registro del teléfono celular**.

V

Por los fundamentos antes expuestos, revocamos la determinación del Tribunal de Apelaciones y ordenamos la devolución del caso al Tribunal de Primera Instancia para que evalúe las circunstancias bajo las cuales se encontraba el teléfono celular al momento del registro y realice la determinación correspondiente conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                        CC-2014-767      Certiorari

José A. López Colón

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 11 de mayo de 2018.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos la determinación del Tribunal de Apelaciones y ordenamos la devolución del caso al Tribunal de Primera Instancia para que evalúe las circunstancias bajo las cuales se encontraba el teléfono celular al momento del registro y realice la determinación correspondiente conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Presidenta Interina señora Rodríguez Rodríguez emite Opinión disidente a la cual se une el Juez Asociado señor Colón Pérez. El Juez Asociado señor Estrella Martínez emite Opinión disidente. La Jueza Presidenta Oronoz Rodríguez disiente sin opinión escrita.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>José A. López Colón<br><br>Peticionario | **Núm.** CC-2014-0767 | |

Opinión disidente emitida por la Juez Presidenta Interina señora Rodríguez Rodríguez a la cual se une el Juez Asociado señor Colón Pérez

San Juan, Puerto Rico, a 11 de mayo de 2018.

En vista de que nuestro estado de Derecho y la jurisprudencia más reciente del Tribunal Supremo de Estados Unidos reconocen limitadas excepciones para los registros y allanamientos sin previa orden judicial de dispositivos móviles, disiento enérgicamente del curso de acción tomado por una mayoría de los integrantes de este Foro. Estimo, además, que el presente caso alberga un fenómeno socio-tecnológico que amerita la adopción de un análisis particularizado mediante el cual se establezca un delicado balance entre los intereses en pugna; a saber, la seguridad ciudadana y el derecho a la intimidad sobre el contenido digital de un dispositivo móvil. Por tal razón, a continuación, expongo las razones por las cuales no puedo dar mi anuencia al criterio que suscribe una mayoría de este Tribunal.

# I.

En primer lugar, debemos ser conscientes de que en las pasadas décadas han surgido cambios dramáticos en lo concerniente a la forma en que la información es almacenada y transmitida. Véase Michael Buckland, *Information and Society* (MIT Press, 2017), en la pág. 1. A raíz de tales transformaciones, diversos académicos han alertado sobre la necesidad de repensar la aplicación de la Cuarta Enmienda de la Constitución de Estados Unidos y su homóloga en la Constitución del Estado Libre Asociado de Puerto Rico en controversias relacionadas con la privacidad e intimidad de la información digital generada y almacenada en artefactos electrónicos. Véase John Wesley Hall, Jr., *Search and Seizure*, Vol. II, 4th ed. 2012, en las págs. 446-48; véase además, Alejando H. Mercado Martínez, *Derecho Procesal Civil Avanzado: El Descubrimiento de información electrónica* (e-discovery) (2017), en la pág. 10. En esencia, el reto ante nuestra consideración se ciñe a que la protección constitucional en contra de los registros y allanamientos irrazonables, y las reconocidas excepciones a ésta, fueron diseñadas para **espacios físicos**. De por sí, esto supone que las analogías de tales doctrinas al mundo digital arrojarán resultados **incongruentes** que atentan contra garantías constitucionales de gran arraigo en el derecho puertorriqueño, como el derecho a la intimidad.

Por otra parte, como respuesta incipiente a este panorama, el Tribunal Supremo de Estados Unidos comenzó a delinear los contornos particularizados del derecho a la privacidad e intimidad sobre el contenido digital de un dispositivo móvil en *Riley v. California*, 134 S.Ct. 2473, 573 US___(2014). En síntesis, *Riley* estableció que el registro de un dispositivo móvil sin una orden judicial viola la Cuarta Enmienda. Para llegar a tal determinación, el Tribunal Supremo federal puntualizó que la excepción del registro incidental al arresto allí invocada era inaplicable, pues dicha doctrina se desarrolló para el registro de espacios físicos.[51] En este sentido, cabe destacar que una de las virtudes de *Riley* es que, dentro de la casuística sobre esta materia, éste es el primer caso en el cual el Tribunal Supremo federal optó por **alejarse** de la aplicación analógica de las doctrinas de excepción para los registros y allanamientos sin orden judicial. Véase *Fourth Amendment in the digital age NACDL Symposium* (2016), en la pág. 28.

---

[51] Sobre este particular, el Tribunal Supremo federal dispuso lo siguiente: "A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but more substantial privacy interests are at stake when digital data is involved." *Riley v. California*, 134 S.Ct. 2473, 2488-91. Véase además, Charles E. MacLean, *But, Your Honor, a Cell Phone is not a Cigarette Pack: An Immodest Call for a Return to the Chimel Justifications for Cell Phone Memory Searches Incident to Lawful Arrest*, 6 THE FEDERAL COURTS LAW REVIEW 38 (2012).

Ahora bien, y conforme a lo antes discutido, considero un error el análisis adoptado por la Mayoría, o la falta de uno, para la aplicabilidad de la excepción de autoridad común invocada en el caso de epígrafe. Como bien se ha reconocido, un registro sin previa orden judicial se presume irrazonable y le corresponde al Ministerio Público invocar afirmativamente alguna de las excepciones reconocidas jurisprudencialmente. En el presente caso, la aplicación analógica de una doctrina diseñada para un espacio físico —como lo es la doctrina de autoridad común— poco o nada aporta a la resolución de la controversia. A su vez, circunscribir la aplicabilidad de la doctrina de autoridad común a la existencia de una contraseña, o cualquier otra presunta acción protectora para salvaguardar el derecho de intimidad, contraviene lo resuelto en *Riley*. Ello pues, tal proceder incide en el grado de protección conferida a la información almacenada en un dispositivo móvil. Según lo resuelto en *Riley*, la expectativa de intimidad sobre la información digital de un dispositivo móvil surge de la naturaleza misma del artefacto electrónico y el potencial de éste para generar y almacenar información tradicionalmente considerada privada y sensitiva.

## II.

Lamentablemente, una mayoría de este Tribunal, una vez más, aplica irreflexivamente una excepción al requerimiento de orden judicial para un registro y

allanamiento con el efecto irremisible de limitar los derechos constitucionales de nuestra ciudadanía más allá del ámbito mínimo de protección establecido por la jurisprudencia federal. Véase *Pueblo v. Báez López*, 189 D.P.R. 918 (2013). La extemporaneidad del análisis vertido en la Opinión mayoritaria no da cuenta de las particularidades intrínsecas de un dispositivo móvil y desatiende la norma pautada por el Tribunal Supremo de Estados Unidos en *Riley*. Por entender que la doctrina de autoridad común es inaplicable al registro sin orden judicial de un objeto que almacena información íntima y personalísima de un individuo, disiento del proceder de una mayoría. Contrario a lo resuelto en la Opinión, suprimiría -como cuestión de Derecho y sin trámite ulterior- la evidencia obtenida mediante el registro ilegal del dispositivo móvil del peticionario.

                              Anabelle Rodríguez Rodríguez
                               Juez Presidenta Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br><br>           v.<br><br><br>José A. López Colón<br><br>    Peticionario | CC-2014-767 | *Certiorari* |

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 11 de mayo de 2018.

Hoy, una Mayoría de este Tribunal trastoca severamente garantías firmemente arraigadas en nuestra sociedad democrática y, con ello, peligrosamente diluye el derecho de intimidad que cobija a nuestros ciudadanos con relación al contenido digital de sus teléfonos celulares. Lejos de conciliar los intereses en pugna para determinar la razonabilidad de la intrusión gubernamental, antepone desproporcional e injustificadamente el interés del Estado sobre la protección constitucional contra registros y allanamientos irrazonables. Así, permite que la "inconveniencia" que pudiera representar para los agentes del orden público obtener una orden judicial previa al registro de un teléfono celular pulverice un derecho tan fundamental como el de la intimidad. Todo

lo anterior, a pesar que la persona no tenía el teléfono celular en su poder y ya se encontraba bajo la custodia de las autoridades. Es por ello que DISIENTO del dictamen que hoy se emite.

Examinemos el contexto fáctico y procesal en el cual se desató la controversia ante nuestra consideración.

**I**

El caso de epígrafe tiene su origen en hechos ocurridos el 9 de agosto de 2013, por los cuales se presentaron denuncias en contra del Sr. José A. López Colón (señor López Colón o peticionario) por alegadas infracciones al Artículo 95 del Código Penal de Puerto Rico, 33 LPRA sec. 5144, y los Artículos 5.04 y 5.15 de la Ley de Armas de Puerto Rico, 25 LPRA secs. 458c y 458n. En esencia, se le imputó haberle causado la muerte al hermano de su esposa, Sra. Madeline Colón Ugarte (señora Colón Ugarte o esposa del peticionario), utilizando un arma de fuego como resultado de súbita pendencia o arrebato de cólera.

Presentadas las acusaciones y señalada la celebración del juicio en su fondo, el peticionario solicitó la supresión de cierta evidencia que fue obtenida ilegalmente y se pretendía utilizar en su contra. Específicamente, sostuvo que correspondía suprimir unos videos que fueron obtenidos mediante la incautación y registro de su teléfono celular de su uso

exclusivo y de una caja DVR (*Digital Video Recorder*) del sistema de cámaras de seguridad de su residencia. Amparó su solicitud en que los objetos fueron ocupados y registrados sin una orden judicial, en su ausencia, mientras estaba arrestado en el cuartel de la Policía, y sin que brindara su consentimiento. Ello, en contravención a las Secciones 8 y 10 del Artículo II de la Constitución de Puerto Rico, la Cuarta Enmienda de la Constitución federal y su jurisprudencia interpretativa.

A su vez, alegó que la validez del consentimiento a un registro por un tercero depende de si la persona que consiente tiene autoridad para ello y si el ciudadano que reclama la protección contra registros irrazonables tiene una expectativa razonable de intimidad. En ese sentido, resaltó que la autoridad que posea el tercero que consiente no se determina a base del derecho de propiedad sobre el objeto registrado, sino sobre su uso mutuo por personas que tienen una legítima expectativa de intimidad. Por su parte, el Estado se opuso a la supresión de la evidencia amparándose, esencialmente, en que el peticionario no cumplió con los requisitos establecidos en la Regla 234 de Procedimiento Criminal, 34 LPRA sec. 234.

Así las cosas, el foro primario celebró una vista de supresión de evidencia en la cual testificó el agente Edgar Pérez Talavera (agente Pérez Talavera)

como testigo de cargo, y la señora Colón Ugarte como testigo de la defensa. Según surge de la transcripción de la vista celebrada, el agente Pérez Talavera relató que tras arribar al lugar de los hechos observó que la escena estaba custodiada por varios compañeros uniformados, por lo cual procedió a realizar un examen general de la escena. En esa área, que catalogó como una escena protegida, observó el cuerpo sin vida de una persona y notó que había varias residencias y un colegio. Asimismo, se percató que una de las residencias tenía cámaras de seguridad. Luego de trabajar la escena y entrevistar a varias personas, se dirigió hacia la residencia que tenía las cámaras de seguridad. Para ese entonces, el agente Pérez Talavera conocía que se trataba de la residencia del señor López Colón, único sospechoso de la muerte que era objeto de su investigación. De igual forma, éste estaba consciente que el peticionario ya se encontraba detenido en el cuartel de la Policía.

Del mismo modo, testificó que una vez llegó a la casa del señor López Colón, se encontró con la esposa de éste, la señora Colón Ugarte, se identificó como agente de la Policía de Puerto Rico y le notificó que estaba investigando los hechos ocurridos. Acto seguido, le preguntó a la esposa del peticionario si le permitía acceso a las cámaras de seguridad y procedió a registrar el contenido de éstas. Mientras observaba el

video de los sucesos, se percató que éste tenía un teléfono celular en la mano. Como consecuencia de ello, le preguntó a la señora Colón Ugarte por el celular y ésta le indicó que lo tenía en su poder, por lo cual el agente Pérez Talavera le solicitó que se lo proveyera. La esposa del peticionario le proveyó el celular al agente y éste lo entregó a la Unidad Técnica de Grabaciones de la Policía para que lo registraran y sustrajeran videos y fotos.

Es importante señalar que, a preguntas del representante legal del señor López Colón, el agente Pérez Talavera afirmó que aun cuando se sentía cómodo haciendo su trabajo mientras investigaba los hechos ocurridos, y no existía nada que le impidiera obtener una orden para incautar y registrar el teléfono celular, no era necesario obtener una orden judicial a esos efectos. Ello, porque la dueña de la residencia estaba allí y había consentido. Por su parte, la señora Colón Ugarte testificó que entregó el teléfono celular al agente, porque entendía que estaba cumpliendo con la ley y era lo correcto. Además, indicó que nadie le dijo que podía negarse a entregarlo.

Celebrada la correspondiente vista al amparo de la Regla 234 de Procedimiento Criminal, supra, el Tribunal de Primera Instancia denegó la supresión de la evidencia, así como una reconsideración presentada oportunamente por el peticionario. Concluyó que no

estaba en controversia que "los artefactos ocupados eran de uso común de la pareja". Resolución del Tribunal de Primera Instancia de 28 de mayo de 2014, Apéndice del *certiorari*, pág. 51. Particularmente, en lo pertinente, razonó que:

> En el caso del celular la señora Colón testificó y no es un hecho en controversia que la cuenta que brindaba servicio telefónico a dicho artefacto estaba a su nombre. Por lo tanto debe entenderse que esta tenía autoridad sobre el celular y sobre su contenido por lo cual podía autorizar a su registro. Íd., págs. 51-52.

Asimismo, en lo atinente al consentimiento de la señora Colón Ugarte, determinó que ésta consintió a la ocupación y registro de los artefactos sin que mediara coacción, por lo cual no procedía la supresión de la evidencia.

Inconforme, el señor López Colón recurrió al Tribunal de Apelaciones mediante un recurso de *certiorari* y una moción en auxilio de jurisdicción. Solicitó la paralización de los procedimientos ante el foro primario hasta tanto se resolviera el asunto de la admisibilidad de la prueba obtenida como resultado del registro de su teléfono celular. Además, señaló que el Tribunal de Primera Instancia erró al no suprimir tal evidencia, a pesar que no hubo un consentimiento válido para la ocupación y posterior registro de su teléfono celular. De igual modo, sostuvo que el foro primario incidió al determinar que el sólo hecho de que una

persona posea la titularidad de una propiedad le confiere la autoridad para consentir a su ocupación y registro por parte de los agentes del orden público.

Por su parte, el Estado se opuso y alegó que el Tribunal de Primera Instancia actuó correctamente, toda vez que la señora Colón Ugarte podía consentir a que el agente Pérez Talavera entrara a la residencia en la que vivía con el señor López Colón e incautara la evidencia que estimara pertinente para su investigación, incluyendo el celular de uso exclusivo del peticionario. Asimismo, adujo que ésta podía autorizar al agente a registrar el contenido digital del teléfono celular de forma irrestricta. Particularmente, el Estado se amparó en que la esposa del peticionario era la titular de la cuenta del teléfono celular, por lo cual arguyó que ésta tenía un derecho propietario sobre el artefacto que le facultaba para autorizar su incautación y registro. Además, argumentó que por tratarse este caso de un registro consentido no era de aplicabilidad lo resuelto por el Tribunal Supremo federal en Riley v. California, 134 S. Ct. 2473 (2014).

En la alternativa, el Estado alegó que aún bajo la premisa de que el señor López Colón albergara un derecho de intimidad sobre el contenido digital de su teléfono celular de uso exclusivo, su expectativa de intimidad era limitada. Ello, pues, la señora Colón Ugarte podía "acceder irrestrictamente a los archivos

digitales guardados en la unidad como copropietaria de la unidad celular pues el artefacto aludido no tenía contraseña de seguridad que impidiera acceder a sus archivos". Escrito en Cumplimiento de Orden, Apéndice del *certiorari*, págs. 86-87.

Aquilatados los planteamientos de ambas partes, el foro apelativo intermedio confirmó el dictamen emitido por el Tribunal de Primera Instancia. Determinó que la señora Colón Ugarte tenía la autoridad para permitir la ocupación y registro del teléfono celular. Ello, por entender que el peticionario asumió el riesgo de que su esposa permitiera que el teléfono celular fuera registrado por tenerlo a nombre de ella. En ese sentido, concluyó que el señor López Colón no tenía una expectativa de intimidad razonable y legítima con relación al teléfono celular.

En desacuerdo con la determinación del Tribunal de Apelaciones, el peticionario compareció ante nos mediante un recurso de *certiorari* y una moción en auxilio de jurisdicción. En esencia, reproduce los argumentos presentados ante el foro recurrido en lo concerniente a que procedía suprimir la evidencia obtenida del registro sin orden del teléfono celular que es de su uso exclusivo. Lo anterior, toda vez que no consintió a tal registro y su esposa no podía autorizar la ocupación y registro del teléfono celular, por el mero hecho de ser la titular de la cuenta de

éste. Por su parte, el Estado reitera la postura esbozada ante los foros recurridos referente a que la esposa del peticionario brindó un consentimiento válido al registro del teléfono celular.

Así las cosas, una Mayoría de este Tribunal determina desacertadamente que procede devolver el caso al foro primario "para que evalúe si el peticionario realizó algún acto dirigido a proteger su derecho a la intimidad sobre su teléfono celular o si, por el contrario, asumió el riesgo de que su esposa tuviera acceso al equipo y, por lo tanto, pudiera consentir válidamente al registro del teléfono celular". Opinión mayoritaria, pág. 27.

Por considerar que con ello se diluye desproporcional e injustificadamente el derecho a la intimidad de los ciudadanos, DISIENTO.

Con ello en mente, procedo a exponer el marco jurídico aplicable.

**II**

**A.**

Sabido es que la Sección 10 del Artículo II de la Constitución de Puerto Rico y la Cuarta Enmienda de la Constitución federal protegen al ciudadano contra los registros, incautaciones y allanamientos irrazonables por parte del Estado. Particularmente, la Sección 10 dispone, en lo pertinente, que "[n]o se violará el derecho del pueblo a la protección de sus personas,

casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables". Art. II, Sec. 10, Const. ELA, LPRA, Tomo I. De igual forma, establece que "sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse". Íd. Además, precisa que la evidencia obtenida en violación a los preceptos citados será inadmisible en los tribunales. Íd. De forma similar, la Cuarta Enmienda de la Constitución federal establece lo siguiente:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. Emda. IV, Const. EE UU, LPRA, Tomo I.

Según se desprende de las disposiciones constitucionales citadas, la intención de los constituyentes fue proteger el derecho de intimidad y dignidad del ser humano, amparar sus pertenencias frente actuaciones irrazonables del Estado, e interponer la figura neutral de un juez para garantizar la razonabilidad de la intervención gubernamental con los ciudadanos. Pueblo v. Báez López, 189 DPR 918, 927 (2013). Asimismo, queda claro que la Constitución de

Puerto Rico provee unas garantías más abarcadoras que la Constitución federal en lo referente a la protección contra registros e incautaciones irrazonables. Íd., pág. 928. En ese sentido, adviértase que, a diferencia de la Constitución federal, la Sección 8 de nuestra Carta de Derechos dispone para la protección de la honra, reputación y vida privada de las personas. Pueblo v. Bonilla, 149 DPR 318, 329 (1999). De esa manera, "el efecto conjunto de esta cláusula y la garantía constitucional contra registros y allanamientos irrazonables ha sido establecer el derecho a la intimidad como uno de los de más alta jerarquía en nuestro ordenamiento." Íd.

Al amparo de este esquema constitucional, este Tribunal ha expresado que cuando se reclame una violación a las garantías contenidas en la Sección 10, resulta imperativo determinar si, en efecto, hubo un registro que haya vulnerado la expectativa razonable de intimidad que nuestra sociedad reconoce. Íd., págs. 329-330; Pueblo v. Báez López, supra, págs. 928-929. En ese ejercicio, es preciso establecer si la persona albergaba una expectativa razonable de intimidad dentro de las particularidades de cada caso y si tal derecho está reconocido por nuestros conciudadanos. Pueblo v. Báez López, supra, pág. 929; Pueblo v. Bonilla, supra, pág. 330. Así, la aplicabilidad de la protección contra registros e incautaciones irrazonables dependerá de los

siguientes elementos: (1) la naturaleza de la intrusión gubernamental; (2) su efecto sobre la expectativa de intimidad del ciudadano, y (3) la necesidad y utilidad del método investigativo utilizado para implantar la ley. Pueblo v. Báez López, supra, pág. 929.

De determinarse que existe una expectativa razonable de intimidad protegida por las garantías conferidas en la Sección 10 de nuestra Constitución, y que el Estado en efecto llevó a cabo un registro, corresponde examinar la razonabilidad de éste. Íd.; Pueblo en interés del menor N.O.R., 136 DPR 949, 963-964 (1994). Es decir, "la razonabilidad de la intervención será la piedra angular de su validez constitucional", la cual dependerá del balance de intereses entre la expectativa de intimidad del individuo y los intereses públicos que motivaron la intervención estatal. Pueblo v. Báez López, supra, pág. 929; Pueblo en interés del menor N.O.R., supra, pág. 964.

En armonía con lo anterior, es norma ampliamente conocida que todo registro, allanamiento o incautación sin orden judicial previa se presume irrazonable y, por tanto, ilegal e inválido. Pueblo v. Blase Vázquez, 148 DPR 618, 631 (1999). Cónsono con ello, este Tribunal ha expresado que cuando se obtiene evidencia sin que medie una orden judicial, el Ministerio Público tiene la obligación de refutar la presunción de ilegalidad y, de

igual modo, le corresponde establecer los elementos que configuren una de las excepciones a la regla de obtener una orden judicial previa. Íd. Por tanto, aunque se han reconocido excepciones al mandato constitucional de obtener una orden judicial previa a un registro o allanamiento, éstas han sido limitadas a circunstancias especiales y particulares que han sido definidas jurisprudencialmente.[52] Pueblo v. Miranda Alvarado, 143 DPR 356, 363 (1997). Además, resulta importante señalar que:

> Al decidir si procede eximir a las autoridades de la necesidad de obtener una orden judicial de registro, la pregunta no debe ser sólo si el interés público lo justifica, sino **si el peso de conseguir dicha orden bajo las circunstancias particulares del caso, probablemente frustraría el propósito gubernamental legítimo que se persigue.** Pueblo v. Bonilla, supra, pág. 334 (énfasis suplido).

**B.**

En lo pertinente a la controversia ante nos, una de las excepciones reconocidas al requisito de orden

---

[52] Particularmente, se han reconocido las siguientes excepciones al requisito de una orden previa para un registro válido: (1) un registro incidental a un arresto legal; (2) un registro consentido voluntariamente de forma expresa o implícita; (3) un registro en situación de emergencia; (4) una evidencia ocupada en el transcurso de una persecución; (5) evidencia a plena vista o percepción por tacto; (6) un agente del orden público que adviene en conocimiento de la existencia de material delictivo por el olfato; (7) evidencia abandonada; (8) registro o allanamiento de una estructura abandonada; (9) evidencia obtenida durante un registro administrativo; (10) registro tipo inventario, y (11) evidencia obtenida en un lugar público como resultado de la utilización de canes para olfatear. Pueblo v. Báez López, 189 DPR 918, 930-931 (2013).

judicial previa es cuando media consentimiento para el registro. Pueblo v. Miranda Alvarado, supra, pág. 364. En lo atinente a esta excepción, este Tribunal ha expresado que "sólo el titular **del derecho** puede válidamente renunciar a éste". Íd. (énfasis suplido). De igual manera, ha establecido que la renuncia puede ser expresa o tácita. Para analizar la validez del consentimiento, se deben considerar los factores siguientes: (1) si hubo fuerza o violencia; (2) si el registro se efectuó luego de un arresto, y (3) si había otras personas presentes. Íd. Asimismo, para que el consentimiento se determine válido resulta indispensable que sea prestado por la persona con autoridad para ello y que se haga voluntariamente, sin que haya mediado coacción directa o indirecta. Íd.

No obstante, este Tribunal también ha reconocido que, ante la ausencia del titular del derecho y en determinadas circunstancias, un tercero puede consentir válidamente al registro de una propiedad. Íd., pág. 365. Particularmente, ha resuelto que para que el consentimiento sea válido no es necesario que la persona que lo preste tenga un interés legal en la propiedad. Ello, de conformidad a la norma establecida por el foro supremo federal en United States v. Matlock, 415 U.S. 164 (1974). Al amparo del citado caso, se ha establecido que lo determinante es que el tercero "posea 'autoridad común u otra relación

suficiente respecto a la propiedad que habrá de ser registrada'". Pueblo v. Miranda Alvarado, supra, pág. 365; Pueblo v. Narváez Cruz, 121 DPR 429, 437 (1988). Véase United States v. Matlock, supra, pág. 171. Igualmente, se ha interpretado que el concepto de autoridad común "depende del uso mutuo de la propiedad por personas que generalmente **tienen un control conjunto** [con respecto a la propiedad] en cuanto a varios propósitos" y que, por tanto, "es razonable reconocer que cualquiera de los cohabitantes tiene autoridad, por derecho propio, para permitir la inspección y que los otros asuman el riesgo de que uno de ellos permita que el área común sea registrada". Pueblo v. Miranda Alvarado, supra, págs. 365-366 (énfasis en el original); Pueblo v. Narváez Cruz, supra, pág. 437. Véase United States v. Matlock, supra, pág. 171. A base de ello, este Tribunal ha expresado que lo anterior implica que un tercero no puede consentir válidamente a que se registre una propiedad que está en la posesión exclusiva de otra persona. Pueblo v. Narváez Cruz, supra, pág. 437.

Cabe mencionar que en United States v. Matlock, supra, el máximo foro federal estableció la doctrina jurisprudencial antes descrita en el contexto de un consentimiento prestado por un tercero para el registro sin orden de una casa, incluyendo el cuarto que ocupaba la tercera persona en conjunto con el acusado de

delito. Como resultado del registro de un closet del cuarto que ocupaban conjuntamente, **se incautó dinero en efectivo que se encontraba en una bolsa de pañales**. A base de esta evidencia incautada durante el registro sin orden, se vinculó al acusado con la comisión de un robo a una institución financiera. El Tribunal Supremo federal determinó que el registro sin orden fue válido por el consentimiento brindado por una tercera persona que compartía el cuarto con el acusado, por lo cual se admitió la evidencia en el procedimiento en su contra.

En aquel entonces, el referido foro hizo referencia a <u>Frazier v. Cupp</u>, 394 U.S. 731 (1969), un caso en el que se declaró válido un registro sin orden, ya que medió el consentimiento del primo del acusado. Específicamente, el acusado y su primo compartían el uso de un bulto, el cual fue registrado por los agentes del orden público con el consentimiento voluntario del primo. Como consecuencia de ello, **se incautó ropa del imputado de delito**, la cual fue admitida como prueba en el proceso penal en su contra. El foro supremo rechazó el planteamiento del acusado a los efectos de que su primo sólo utilizaba un compartimiento del bulto, por lo cual no podía consentir a que se registrara indiscriminadamente el interior de éste.

Asimismo, en casos posteriores a <u>United States v. Matlock</u>, supra, el Tribunal Supremo federal ha validado registros sin orden de residencias cuando se ha

obtenido el consentimiento de un tercero con autoridad común o autoridad aparente sobre la residencia del acusado de delito. Véase Fernández v. California, 134 S. Ct. 1126 (2014); Illinois v. Rodríguez, 497 U.S. 177 (1990). Ello ha resultado, a su vez, en la admisibilidad de prueba obtenida como parte del registro sin orden de la residencia. No obstante, **resulta importante destacar que los efectos personales ocupados en los casos citados consistían de sustancias controladas y parafernalia que estaban a plena vista, así como parafernalia utilizada por una conocida ganga criminal, una cuchilla, ropa que coincidía con la descripción del sospechoso del delito y municiones.** Véase Fernández v. California, 134 S. Ct. 1126 (2014); Illinois v. Rodríguez, 497 U.S. 177 (1990).

De forma similar, en nuestra jurisprudencia se han validado registros sin orden de residencias y de la prueba que se incauta en ellas durante el registro. Ello, al amparo del consentimiento prestado por un tercero. Sin embargo, resalto que se trataba de escenarios distintos al caso que nos ocupa. A modo de ejemplo, en Pueblo en interés del menor F.J.M.R., 111 DPR 501 (1981), se validó un registro sin orden de una residencia, incluyendo el cuarto del menor imputado de delito, a base del consentimiento prestado por su padre. Como resultado del registro efectuado, se incautaron **sustancias controladas que se encontraban a**

**plena vista, así como una caja de pañales donde se halló un *stereo* que era objeto de la querella presentada.** De igual forma, en <u>Pueblo v. Ramos Santos</u>, 132 DPR 363 (1992), se trataba de un imputado de delito que se encontraba en un apartamento como huésped y la propietaria consintió al registro sin orden de la residencia. Como producto del registro, se incautó la **ropa húmeda del imputado, la cual coincidía con la descripción del sospechoso, y sus zapatos.**

### III

Examinada la normativa jurídica desarrollada en torno a la protección constitucional contra registros irrazonables, así como el marco doctrinal del consentimiento prestado por un tercero como una excepción al requisito de previa orden, procedo a dilucidar la cuestión particular planteada ante nos. Esto es, ¿fue válido el registro sin orden del teléfono celular de uso exclusivo del señor López Colón? En aras de resolver esta interrogante, se debe determinar si el peticionario albergaba una expectativa razonable de intimidad que resultó vulnerada por la intromisión gubernamental y, de ser así, si en este caso hubo un consentimiento válido por parte de la señora Colón Ugarte que justificara el registro sin orden del contenido digital del teléfono celular.

Como indicamos, el señor López Colón arguye que correspondía suprimir la evidencia obtenida como

resultado del registro sin orden del contenido de su teléfono celular. Ello, toda vez que no consintió a tal registro y su esposa, contrario a lo resuelto por los foros recurridos, no tenía autoridad para consentir por el hecho de ser la titular de la cuenta del celular. Por su parte, el Estado argumenta que la señora Colón Ugarte podía consentir a que el agente Pérez Talavera registrara el contenido digital del teléfono celular de forma irrestricta. Lo anterior, amparándose en que era la titular de la cuenta del celular. En la alternativa, aduce que la expectativa de intimidad que pudiera albergar el señor López Colón era limitada. Ello, debido a que el teléfono celular no tenía una contraseña de seguridad que impidiera que su esposa accediera irrestrictamente a los archivos digitales guardados en el dispositivo.

Ante ello, una Mayoría de este Tribunal acoge lo planteado por el Estado en la alternativa y devuelve el caso al foro primario. Como adelantamos, determina que quien posea el uso exclusivo de un teléfono celular debe tomar las debidas precauciones para proteger su derecho de intimidad y evitar que otros adquieran "autoridad común" sobre el equipo. De esa forma, este Tribunal entiende que si la persona con uso exclusivo del celular no le pone una contraseña o no lo oculta para que el titular de la cuenta no tenga acceso,

entonces asume el riesgo de que éste consienta al registro sin orden de su celular.

Debo aclarar que considero que al amparo de la doctrina expuesta en United States v. Matlock, supra, en determinadas circunstancias, un "roommate" o un "housemate" podría consentir al registro de la residencia o de una habitación que utilizan conjuntamente. Incluso, en ciertos casos cuyas particularidades lo permitan, se podría validar la incautación y registro de efectos personales como resultado del registro de una residencia. No obstante, el análisis no puede ser el mismo cuando se trata de un registro de la información y los datos contenidos en un teléfono celular. Ello constituiría un gran agravio a la intimidad del individuo.

Por tanto, sostengo que este caso debió resolverse a la luz del más reciente pronunciamiento del Tribunal Supremo federal con relación a la expectativa de intimidad que alberga un individuo con respecto al contenido digital de su teléfono celular. Abundemos.

**A.**

En Riley v. California, 134 S. Ct. 2473 (2014), el máximo foro federal se enfrentó a una controversia similar a la planteada en el caso ante nuestra consideración. Específicamente, atendió el asunto de si un agente del orden público podía registrar el contenido digital de un teléfono celular sin una orden

judicial previa, amparándose en una de las limitadas excepciones a ese requisito constitucional. En aquel caso, sin embargo, se planteó como justificación al registro sin orden que se trataba de un registro incidental a un arresto legal.

El referido foro atendió dos casos consolidados. En el primero, el acusado fue arrestado válidamente por infracciones a las leyes de tránsito y poseer armas de fuego. Los agentes lo registraron y, como resultado de ello, ocuparon el teléfono celular que éste llevaba en un bolsillo del pantalón. Posteriormente, se registró el contenido del celular incautado sin obtener una orden judicial previa. En el segundo caso, el imputado fue arrestado por aparentemente efectuar una venta de sustancias controladas desde un vehículo de motor y fue llevado al cuartel de la Policía. Una vez allí, los agentes incautaron dos celulares que éste tenía en su poder. Uno de los celulares estaba recibiendo llamadas constantes y, ante ello, los agentes registraron el contenido del celular. Con la información sustraída del celular, obtuvieron la dirección del apartamento del acusado, el cual luego registraron con una orden.

Ante tales hechos, el más alto foro federal destacó que las particularidades de la controversia ante sí le exigían resolver si la excepción del registro incidental a un arresto legal aplicaba al registro de los teléfonos celulares modernos. En ese

ejercicio adjudicativo, concluyó que la doctrina del registro incidental a un arresto legal y su jurisprudencia interpretativa **no podía extenderse a los registros del contenido digital de un teléfono celular.** De esa forma, dictaminó sin ambages que su respuesta a la interrogante de qué debe hacer un agente del orden público antes de registrar un celular incautado incidental a un arresto es sencilla: obtener una orden judicial. Riley v. California, supra, pág. 2495. De igual modo, aclaró que ello no implicaba que el contenido de un celular es inmune a un registro, sino que la norma pautada es que generalmente se requerirá obtener una orden antes de efectuar este tipo de registro. Ello, aun cuando el celular haya sido incautado incidental a un arresto válido. Íd., pág. 2493.

En apoyo a su determinación, el Tribunal Supremo federal realizó un análisis minucioso y detallado de la naturaleza de este tipo de dispositivo con capacidad para almacenar una cantidad inimaginable de información sobre la vida de una persona. En ese sentido, fue enfático en que el registro de este tipo de artefacto digital no era comparable con el registro de una residencia y, mucho menos, de otros efectos personales. Particularmente, destacó lo siguiente: "[A] cell phone search would typically expose to the government far **more** than the most exhaustive search of a house: A

phone not only contains a broad array of private information never found in a home in any form – unless the phone is." Íd., pág. 2491 (énfasis en el original). Igualmente, expuso que **"[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse."** Íd., págs. 2488-2489 (énfasis suplido). En aras de colocar en justa perspectiva lo anterior, explicó que:

> **The storage capacity of cell phones has several interrelated consequences for privacy.** First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. **The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet.** Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.
>
> Finally, **there is an element of pervasiveness that characterizes cell phones but not physical records.** Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception. . . . **Allowing the police to scrutinize such records on a routine basis is quite different from allowing them to search a personal item or two**

**in the occasional case.** <u>Íd.</u>, págs. 2489-2490 (énfasis suplido).

**B.**

En virtud de lo anterior, la controversia traída ante nuestra consideración exigía que la abordáramos a la luz del derecho expuesto, respecto a la aplicabilidad de la doctrina del consentimiento prestado por un tercero para un registro del contenido digital de un teléfono celular. Ello, toda vez que no albergamos duda que en este caso la intervención estatal constituyó un registro de un artefacto sobre el cual el señor López Colón tenía una expectativa razonable de intimidad. Tampoco tenemos duda que esa expectativa es una que nuestra sociedad reconoce como razonable. En consecuencia, correspondía evaluar la razonabilidad del registro efectuado balanceando los intereses en pugna. Esto es, se debían armonizar el interés del Estado de procesar criminalmente al peticionario *versus* la protección constitucional que le cobija a éste de que no se sometan sus efectos personales a registros irrazonables y arbitrarios. Esto último como corolario de su derecho a la intimidad.

A los fines de examinar la razonabilidad de la actuación gubernamental, no podía perderse de vista que por tratarse de un registro efectuado sin una orden judicial previa, **en este caso existía una presunción de ilegalidad e invalidez.** Por consiguiente, **le**

**correspondía al Estado** establecer la aplicabilidad de una de las excepciones al requisito constitucional de orden previa. Sin embargo, una Mayoría le impone hoy la carga al ciudadano. A esos efectos, procedía entonces dilucidar si, ante las particularidades que presenta un registro del contenido de un teléfono celular, según reconocido en Riley v. California, supra, aplicaba la excepción de consentimiento por un tercero.

Enmarcada así la controversia, resultaba forzoso concluir que la referida excepción no aplica a las circunstancias particulares de un registro del contenido digital de un teléfono celular. Por tanto, el registro sin orden en este caso debió declararse inválido. Resolver lo contrario tendrá consecuencias serias y nefastas para el derecho de intimidad que cobija a todo ciudadano. Como bien advirtió el Tribunal Supremo federal en Riley v. California, supra, la cantidad de información personal que se almacena en estos dispositivos es ilimitada.

En ese sentido, nótese que tanto la jurisprudencia federal como la estatal han aplicado la excepción de consentimiento por tercero en escenarios en que se consiente al registro de una residencia y, como producto de éste, **se incauta otra evidencia que se hallaba a plena vista u objetos que, de registrarse, no representaban gran intrusión a la intimidad. No obstante, lo mismo no puede decirse del registro del**

**contenido digital de un teléfono celular incautado durante el registro de una residencia.** Los riesgos que presenta este tipo de registro sin orden superan los límites de lo que se considera razonable bajo la Sección 10 de nuestra Constitución y la Cuarta Enmienda de la Constitución federal. Peor aún, resulta innegable que tan grave intrusión a la intimidad no se justifica cuando la comparamos con la carga mínima que se impondría al Estado al exigirle que obtenga una orden judicial previa. Máxime en este caso en que el peso de conseguir la orden no frustraría el propósito gubernamental que se persigue. Recuérdese que, según reconoció el agente Pérez Talavera, el registro sin orden se efectuó cuando ya la escena del crimen estaba protegida; él se sentía cómodo realizando su investigación; el ciudadano no tenía el celular en su poder y se encontraba restringida su libertad. Es decir, nada le impedía obtener una orden judicial previa.

Además, valga cuestionarse: ¿Cuál es el mensaje que la Opinión mayoritaria le está enviando a los agentes del orden público? ¿Cómo éstos podrán determinar si resulta necesario o no obtener una orden previa para el registro de un teléfono celular? ¿Tendrá que inquirirle al tercero titular del celular sobre la dinámica que tiene con el acusado respecto al teléfono celular? ¿Vendrá obligado a indagar con cuánta

frecuencia la tercera persona titular del celular utilizaba el celular, si sólo lo usaba para llamadas de emergencia o si el acusado le dijo que sólo podría utilizarlo en determinadas circunstancias? ¿Deberá preguntarle al tercero titular del celular si el acusado le puso una contraseña a su teléfono celular o dónde lo guardaba?

Lejos de brindarle unas guías claras a estos funcionarios públicos para evitar que incurran en intromisiones arbitrarias e irrazonables, le damos mano libre para soslayar el derecho de intimidad de nuestros ciudadanos y que, luego, argumenten que tal intrusión se justifica "porque razonablemente entendieron que la tercera persona tenía autoridad común aun cuando no la tenía".

No obstante todo lo anterior, una Mayoría de este Tribunal resuelve devolver el asunto al foro primario para que determine si hubo algún acto del señor López Colón dirigido a proteger su derecho a la intimidad sobre su teléfono celular. De lo contrario, entiende que éste habrá asumido el riesgo de que su esposa tuviera acceso al equipo y, por lo tanto, pudiera consentir válidamente al registro del teléfono celular.

Dicho de otro modo, ante tan patente quebranto al derecho de la intimidad de un ciudadano, este Tribunal pauta una norma cuyo efecto es **anteponer injustificadamente el interés gubernamental sobre la**

**protección constitucional que salvaguarda el derecho de los ciudadanos a que el Estado no intervenga de forma arbitraria e irrazonable con sus efectos personales**. De esa manera, echa por la borda una arraigada jurisprudencia y parece olvidar que "[e]l honor y la intimidad son valores del individuo que merecen protección cabal, no sólo frente a atentados provenientes de otros particulares, sino también contra in[j]erencias abusivas de las autoridades". 4 Diario de Sesiones de la Convención Constituyente 2566 (1951). Tal curso de acción lacera irremediablemente el derecho de intimidad del individuo, lo cual no puede justificarse por la "inconveniencia" que podría representar para los agentes del orden público cumplir con el mandato constitucional de obtener una orden judicial antes de efectuar un registro de un teléfono celular. Habida cuenta que, lejos de armonizar los intereses en pugna, la Opinión mayoritaria permite que se lesione gravemente el derecho a la intimidad, una de las garantías de más alta jerarquía en Puerto Rico, DISIENTO vehementemente.


                                        Luis F. Estrella Martínez
                                              Juez Asociado